## EX PARTE BOYER & Another.

ORIGINAL.

Submitted December 17th, 1883.—Decided January 7th, 1884.

*Admiralty—Jurisdiction.*

The District Court of the United States for the Northern District of Illinois, as a court of admiralty, has jurisdiction of a suit *in rem* against a steam canal-boat, to recover damages caused by a collision between her and another canal-boat, while the two boats were navigating the Illinois and Lake Michigan canal, at a point about four miles from its Chicago end, and within the body of Cook county, Illinois, although the libellant's boat was bound from one place in Illinois to another place in Illinois.

Petition for a writ of prohibition to restrain the judge of the

District Court of the United States for the Northern District of Illinois from exercising jurisdiction and entering a final decree in a suit in admiralty in that court, growing out of a collision on the Illinois canal.

*Mr. Robert Rae* for petitioners.
*Mr. C. E. Kremer* opposing.

Mr. Justice Blatchford delivered the opinion of the court.

The owners of the canal-boat Brilliant and her cargo filed a libel in admiralty, in the District Court of the United States for the Northern District of Illinois, against the steam canal-boat B and C, in a case of collision. The libel alleges that the Brilliant is a vessel of more than 20 tons burden, and was employed, at the time of the collision, in the business of commerce and navigation between ports and places in different States and Territories in the United States, upon the lakes and navigable waters connecting said lakes; that the B and C is a vessel of more than 20 tons burden, and was, at the time of the collision, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between ports and places in different States and Territories of the United States, upon the lakes and navigable waters of the United States; that, in August, 1882, the Brilliant, while bound from Morris, Illinois, to Chicago, Illinois, towed, with other canal-boats, by a steam canal-boat, and carrying the proper lights, and moving up the Illinois and Lake Michigan canal, about four miles south of the Chicago end of the canal, was, through the negligence of the B and C, struck and sunk, with her cargo, by the B and C, which was moving in the opposite direction, to the damage of the libellants $1,500. The owners and claimants of the B and C answered the libel, giving their version of the collision and alleging that it was wholly due to the faulty navigation of the Brilliant, and that it occurred on the Illinois and Michigan canal, at a place within the body of Cook county, in the State of Illinois. In November, 1883, the district court made an interlocutory decree, finding that both parties were in fault, and decreeing that they should each pay one-half of the

damages occasioned by the collision, to be thereafter ascertained and assessed by the court.

The owners of the B and C have now presented to this court a petition, praying that a writ of prohibition may issue to the judge of the said district court, prohibiting him from proceeding further in said suit. The ground alleged for the writ is the want of jurisdiction of the district court, as a court of admiralty, over the waters where the collision occurred.

The Illinois and Michigan canal is an artificial navigable water-way connecting Lake Michigan and the Chicago river with the Illinois river and the Mississippi river. By the act of Congress of March 30th, 1822, ch. 14, 3 Stat. 659, the use of certain public lands of the United States was vested in the State of Illinois forever, for a canal to connect the Illinois river with the southern bend of Lake Michigan. The act declared

"That the said canal, when completed, shall be and forever remain a public highway, for the use of the government of the United States, free from any toll or other charge whatever for any property of the United States, or persons in their service, passing through the same."

This declaration was repeated in the act of March 2d, 1827, ch. 51, 4 Stat. 234, granting more land to the State of Illinois to aid it in opening the canal. We take judicial notice of the historical fact that the canal, 96 miles long, was completed in 1848, and is 60 feet wide and 6 feet deep, and is capable of being navigated by vessels which a canal of such size will accommodate, and which can thus pass from the Mississippi river to Lake Michigan and carry on inter-State commerce, although the canal is wholly within the territorial bounds of the State of Illinois. By the act of 1822, if the land granted thereby shall cease to be used for a canal suitable for navigation, the grant is to be void. It may properly be assumed that the district court found to be true the allegations of the libel, before cited, as to the character and employment of the two vessels, those allegations being put in issue by the answer.

Within the principles laid down by this court in the cases of *The Daniel Ball*, 10 Wall. 557, and *The Montello*, 20 Wall.

430, which extended the salutary views of admiralty jurisdiction applied in *The Genesee Chief*, 12 How. 443; *The Hine* v. *Trevor*, 4 Wall. 555, and *The Eagle*, 8 Wall. 15, we have no doubt of the jurisdiction of the district court in this case. Navigable water situated as this canal is, used for the purposes for which it is used, a highway for commerce between ports and places in different States, carried on by vessels such as those in question here, is public water of the United States, and within the legitimate scope of the admiralty jurisdiction conferred by the Constitution and statutes of the United States, even though the canal is wholly artificial, and is wholly within the body of a State, and subject to its ownership and control; and it makes no difference as to the jurisdiction of the district court that one or the other of the vessels was at the time of the collision on a voyage from one place in the State of Illinois to another place in that State. *The Belfast*, 7 Wall. 624. Many of the embarrassments connected with the question of the extent of the jurisdiction of the admiralty disappeared when this court held, in the case of *The Eagle, ubi supra*, that all of the provisions of § 9 of the Judiciary Act of September 24th, 1789, ch. 20, 1 Stat. 77, which conferred admiralty and maritime jurisdiction upon the district courts were inoperative, except the simple clause giving to them "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction." That decision is carried out by the enactment in § 563 of the Revised Statutes, subdivision 8, that the district courts shall have jurisdiction of "all civil causes of admiralty and maritime jurisdiction," thus leaving out the inoperative provisions.

This case does not raise the question whether the admiralty jurisdiction of the district court extends to waters wholly within the body of a State, and from which vessels cannot so pass as to carry on commerce between places in such State and places in another State or in a foreign country; and no opinion is intended to be intimated as to jurisdiction in such a case.

*The prayer of the petition is denied.*