### ILLINOIS CENT. R. Co. *v.* STONE and others.

*(Circuit Court, S. D. Mississippi.  1884.)*

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS.

  A railroad company—purchaser of another railroad—having received a charter from the state through which the latter ran, conditionally upon its payment to the state of the debts of the purchased road, became thus a party to a contract to which the state was the other party, and any law of the state subsequently made restraining the company in its rights under the charter is "a law impairing the obligation of contracts," and therefore void.

2. SAME—LAWS TO REGULATE COMMERCE.

  A state legislative act to fix and regulate the charges of transportation of any road save such as is strictly and entirely within the borders of that state, is a law to regulate commerce, and against the constitution of the United States.

Motion for Preliminary Injunction.

HILL, J.   The questions now presented for decision arise upon complainant's motion for a preliminary injunction to restrain the defendants, as railroad commissioners for the state of Mississippi, from in any way interfering with the complainant or its agents in the management and business of operating its railroad.   The questions presented have been most ably and exhaustively argued by the distinguished and learned counsel on both sides, and are questions of momentous importance to the people, and to the commercial interests of the country at large, as well as to the complainant, and all whose interest it represents.   The facts set forth in the bill, not being controverted, for the purposes of the motion are to be taken to be true. These facts, so far as they relate to the questions now to be decided, are, in substance, as follows:

"The complainant corporation was created by an act of the legislature of the state of Illinois, and is the owner of and operates the Illinois Central Railroad, and its branches and connections, running north from the city of Cairo, in the state of Illinois, and is the lessee of and operates the Chicago, St. Louis & New Orleans Railroad and its branches, extending south from Cairo to the city of New Orleans, in the state of Louisiana.   The Chicago, St. Louis & New Orleans Railroad Company is a corporation created by the legislatures of the states of Louisana, Mississippi, Tennessee, and Kentucky, as a continuous line of railroad communication between the cities of New Orleans and Cairo, and there to connect with the Illinois Central Railroad, and its branches and connections, so as to afford a connected line of transportation for persons and commercial commodities from the city of New Orleans, and its commercial connections on the Mississippi river, Gulf of Mexico, and railway connections, and all intermediate connections, by railroad or water, from New Orleans to the terminus of the Illinois Central Railroad, its branches and connections, thus affording a great commercial highway from the gulf on' the south to the lakes on the north."

Th bill further alleges that the purpose of those who built this extensive channel of commercial communication, and the United States, the states, the counties, and the people, who have contributed thereto, and which they would not otherwise have done, was to establish a highway for the transportation of persons and articles of commerce, for the benefit of themselves and all others who might desire to avail themselves of this means of rapid transit from one part of the United States to another, and to other parts of the world, and over which hundreds of thousands of persons and many millions of property are constantly being transported, and have been for years past, without interruption from any state authority, until recently.

The bill further states that the Chicago, St. Louis & New Orleans Railroad Company became the owner by purchase, under the decrees of this court, of the Mississippi Central Railroad, and of the New Orleans, Jackson & Great Northern Railroad, and all the property connected therewith owned by said railroad companies; the former extending from Canton, in the state of Mississippi, to Cairo, in the state of Illinois, passing through the states of Tennessee and Kentucky, and

the latter from New Orleans, in the state of Louisiana, to Canton, in this state, both being interstate railroads; and by said purchase became vested with all the rights and privileges of the debtor corporations, the sales having been made to satisfy debts owing by said corporations respectively. That as a condition upon which the corporate powers were, by the legislature of the state of Mississippi, granted to the Chicago, St. Louis & New Orleans Railroad Company, it was required of said corporation that it would pay to the state all the indebtedness due from said corporations whose property and rights had been so purchased, and for which said purchaser was not responsible, and which payment, to the amount of $158,978.82, has been made; that under the chartered rights so purchased, and the act of incorporation, it is expressly granted to said corporation the right and power to adapt, establish, and change at pleasure a tariff of charges; that the same right and power was granted to the debtor corporations which was so purchased by complainant's lessor, together with the right and power to select all necessary officers, agents, and employes, and to control and manage and operate said railroad, and all the business and property connected therewith.

The bill further charges that the legislature of the state of Mississippi, on the eleventh day of March, 1884, passed an act, which has been approved by the governor of said state, entitled "An act to provide for the regulation of freight and passenger rates on railroads in this state, and to create a commission to supervise the same, and for other purposes;" that under the provision of this act the defendants have been appointed and commissioned as such commissioners, and have entered upon the discharge of their duties as such, and threaten to interfere with the rights of complainant, to which it has succeeded as such lessee, and which have been enjoyed and exercised by those whose rights complainant has purchased, for a quarter of a century, without just complaint, which interference, it is alleged, if permitted, will greatly injure and embarrass complainant in the management and control of said railroad, and the transportation of persons and freight over the same, in violation of the just rights and privileges so purchased and granted, and in violation of and in conflict with the constitution of the state of Mississippi and of the United States, and from doing which the bill prays the defendants may be restrained and enjoined by the decree of this court.

Whether the act of the legislature creating the commission, and giving it the powers and imposing the duties therein provided, is wise or unwise, on the one hand, or whether the acts of the complainant intended to be controlled by it are just grounds of complaint, on the other, are questions over which this court will not undertake to decide. The only question is, did the legislature have the power and authority, under the constitution of the state of Mississippi and the United States, to enact the law? Or, to state the question in other words, do any of the provisions of the act, and if so, which of them,

violate or conflict with any of the provisions of both or either of these constitutions? If they do not, then the act must be maintained, and the complainant, if suffering a wrong, must apply to the legislature for relief; but if they do, then the act, so far as it does violate any of these constitutional rights, must be declared void, and treated as if the act had never been passed.

It is a well-established and cardinal rule, as expressed by Chief Justice MARSHALL in the case of *Fletcher* v. *Peck*, 6 Cranch. 87,—

"That the question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in doubtful cases. The court, when impelled by duty to render such a judgment, would be unworthy of his station could be be unmindful of the obligation which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a strong conviction of their imcompatibility with each other."

But when the judicial mind is clearly satisfied of the repugnancy of the legislation to the constitution, the fundamental law, then the court has no alternative but to so declare it, and to hold the act of the legislature void. Another rule is that when there are different and distinct provisions in an act, and some of them are in conflict with the constitution and others are not that such as are violative of the constitution are declared void, and the others valid.

Before considering the provisions of the act complained of, it is necessary to consider the nature and character of the rights of the complainant corporation. The rights of the lessor corporation are of a twofold character: *First*, to provide and maintain a great interstate commercial highway for the transportation of persons and property from one state to another, and from one commercial mart to another; *secondly*, to make a return to those who have invested their money in the enterprise, either originally or by purchase, by way of dividends or interest upon the capital invested.

Complainant's road is a public highway, so far as it affords to all a means of transportation upon payment of a reasonable compensation for the service to be performed, the right to receive which is conferred by the charter granted to the Chicago, St. Louis & New Orleans Rai road Company, and the right and power to fix and change at pleasure the rate of charges given in the charter must be understood as reasonable compensation for the services rendered or to be rendered. The complainant being a common carrier is liable to be amerced in damages, not only compensatory, but punitive, for refusing to transport persons or property, suitable for transportation, upon the payment, or tender of payment, of such reasonable compensation. The question of what is reasonable compensation in such cases is one alone for judicial ascertainment, when not fixed by the charter, and no power is reserved therein, thereafter, to fix it.

The rights granted in the act of incorporation, and accepted, constitute a contract between the state of Mississippi and the Chicago, St. Louis & New Orleans Railroad.

The doctrine that the rights, powers, and privileges granted by the legislature in the acts of incorporation, when not violative of any provision of the constitution of the state or United States, and not invalid, constitute a contract between the parties, which is protected by the tenth section of the first article of the constitution of the United States, was first announced by the supreme court of the United States in the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 565, and has been strictly adhered to by that court from that time to the present. Reference to the repeated decisions of that court sustaining this position need not be referred to. These chartered rights, however, are in all cases subject to the police power of the state, with which it is not at liberty to part, and may be granted and withdrawn at the pleasure of the legislature. These police powers relate to the public peace and safety, public health, public morals, and the like. The Chicago, St. Louis, & New Orleans Railroad, upon its creation, became vested with and entitled to all the rights and privileges granted by the charter, and was entitled to all the protection under the law, and subject to all the liabilities, that an individual would have been entitled to, or liable for, in like condition. A private corporation,—and in one point of view complainant is such,—although serving a great public purpose, is an association of individuals for a lawful object. The great object of an incorporation of this character is to give individuality and perpetuity to a collection or body of men for the accomplishment of a common end.

It will be sufficient, for the purpose of disposing of the present motion, to consider only two of the objections stated in the bill to this act of the legislature as violative of the constitution of the United States, either of which, if well taken, must dispose of the motion. The first, and the one which lies at the foundation, is that it violates and is in conflict with the tenth section of the first article of the constitution of the United States, because it impairs the obligation of the contract made between the state of Mississippi and the Chicago, St. Louis & New Orleans Railroad Company, the lessor of complainant, by which said corporation was vested with the power "to make contracts, and to adopt and establish such tariff of charges for the transportation of persons and property as said corporation might think proper, and the same to alter and change at pleasure."

By the sixth section of the act of the legislature complained of, it is provided that—

"All persons or corporations who shall own or operate a railroad in this state shall, within thirty days after the passage of this act, furnish the commission with its tariff of charges for transportation of every kind, and it shall be the duty of said commission to revise said tariff of charges so furnished, and determine whether or not, and in what particular, if any, said

charges are more than just compensation for the services to be rendered, and whether or not unjust discrimination is made in such tariff of charges against any person, locality, or corporation; and when said charges are corrected, as approved by said commission, the commission shall then append a certificate of approval to said tariff of charges; but in revising or establishing any and every tariff of charges, it shall be the duty of said commission to take into consideration the character and nature of the service to be performed, and the entire business of such railroad, together with its earnings from the passenger and other traffic, and shall so revise such tariffs as to allow a fair and just return in value of such railroad, its appurtenances and equipments; and it shall be the duty of said commission to exercise a watchful and careful supervision over every tariff of charges, and continue such tariff of charges from time to time as justice to the public and each of such railroad companies may require, and to increase or reduce any of said rates, according as experience and business operations may show to be just; and said commission shall fix accordingly the tariffs of charges for those railroads failing to furnish tariffs as above required. And it shall be the duty of said railroad company, or persons operating any railroad in this state, to post at each of its depots all rates, schedules, and tariffs for the transportation of passengers and freights, made or approved by said railroad commission, with said certificate of approval, within ten days after said approval, in some conspicuous place at such depot; and it shall be unlawful for any such person or corporation to make any rebate or reduction from such tariff in favor of any person, locality, or corporation which shall not be made in favor of all other persons, localities, or corporations, by a change in such published rates, except as may be allowed by the commission; and when any change is contemplated to be made in the schedule of passenger or freight rates of any railroad by the commission, said commission shall give the person or corporation operating or managing said railroad notice in writing, at least ten days before such change, of the time and place at which such change will be considered."

It is very clear that this act, if enforced by the commission, will deprive complainant of the right to adopt by its duly-appointed officers and establish such a tariff of charges for the transportation of persons and property as it may think proper, and the same to alter and change at pleasure, which right is conferred upon the Chicago, St. Louis & New Orleans Railroad Company by its charter, and to which the complainant is entitled under the lease executed by said company to the complainant, and which has been approved by the legislature. This right and power was granted by the state in the charter, which was accepted by the Chicago, St. Louis & New Orleans Railroad Company without any conditions, restrictions, or limitations upon its enjoyment and exercise, and without any reservation upon the part of the legislature to thereafter impose them. But there was a condition imposed in the charter of a different character, and that was that the corporation should pay to the state an indebtedness due to it from the Mississippi Central Railroad Company, and for which the corporation was in no way liable, amounting to the sum of $158,978.82, which has been paid. Taking the purpose of those contributing to the establishment of this great commercial highway, and the consideration so paid, I can come to no other conclusion than that this charter, with this right and power so given and ac-

cepted, constituted a contract between the state of Mississippi and the corporation which is protected and is inviolate under the tenth section of article 1 of the constitution of the United States, the great sheet-anchor of the rights of corporations as well as individuals, and this conclusion is strengthend by the fact that the right upon the part of the owners of these railroads to charge and receive a fair and reasonable compensation for the money expended by them, and those from whom they have purchased, in building and operating them, is as necessary as is blood to imparting life and motion to the human body, and without which neither can long exist.    I am satisfied that not only the sixth section of this act, but several others, violates this contract so secured by this constitutional provision, and renders the whole act void so far as it relates to the exercise of any power or control by the commission created by it over the Chicago, St. Louis & New Orleans Railroad, so possessed and operated by complainant.

With this conclusion thus reached I might dismiss the subject without further comment, but it has been pressed with great force on the one side, and with equal earnestness and ability resisted on the other, that this act of the legislature is in conflict with and violates the eighth section of the first article of the constitution of the United States, because in purpose and effect it is an attempted regulation of commerce among the states,—a power which is vested exclusively by this provision of the federal constitution in the congress of the United States.    This is a grave and important question, in which all concerned are deeply interested.    As already stated, the right to demand and receive compensation for the expense incurred in building, equipping, and operating this wonderful and immense mode of transportation of persons and property from one place, state, and country to another, is an absolute necessity.    It is difficult to perceive how the power to fix and regulate the charges for such transportation can be considered in any other light than that of a power to regulate commerce, and when the railroad upon which the transportation is made passes through more states than one, or from one state into another, it does constitute 'commerce among the states, and the states have not the power to regulate.

As already stated, the Chicago, St. Louis & New Orleans Railroad was designed to be and was chartered by the legislatures of Louisiana, Mississippi, Tennessee, and Kentucky, though all acting separately, it is true, but with one common purpose, which was to constitute one corporate body for the maintenance of a great commercial highway for the transportation from New Orleans to Cairo, and there to connect with all the commercial highways connecting at that point.    It is not, therefore, a mere local highway, although, as an incident, freight and passengers were intended to be and are transported from one place to another in the same state, as is done by means of vessels, on navigable streams passing by or through more states than

one, in respect to which the supreme court of the United States has decided, in the case where the transportation was of a person from New Orleans to Hermitage, in the state of Louisiana, that it was a commerce within the exclusive control of congress, and for the reason that the vessel was engaged in the transportation of passengers on the Mississippi river between New Orleans, in Louisiana, and Vicksburg, in this state, and that an act of the legislature of Louisana, attempting to control the carrying of passengers on steam-boats in that state, was a violation of the provisions of the constitution of the United States conferring upon congress the power to regulate commerce among the states. See *Hall* v. *De Cuir*, 95 U. S. 485. In the case of *Ex parte Boyer*, 109 U. S. 629, S. C. 3 Sup. Ct. Rep. 434, the same court decided that a canal, constructed wholly in one state and by that state, but forming part of a line of transportation passing through more states than one, or from one state into another, is within the admiralty jurisdiction, and it would follow that interstate commerce conducted on it is under the exclusive control of congress.

It is argued upon the part of defendants that there is a distinction between water or a natural highway and an artificial one; but the canal is an artificial way, and it is difficult to find a reason for a distinction between the water on which the canal-boat or other vessel floats and the iron rails over which the cars pass in transporting the same character of persons and property.

I do not suppose it can be seriously questioned that the original act as passed by the legislature violated the provisions of the federal constitution under consideration, and the legislature seems to have recognized that fact, and therefore, in the effort to avoid the result, passed a supplemental act confining its operations to persons and property transported from one place to another within the state, and to persons and freight transported from a place without the state to a place within the state, and from a place within the state to a place without the state.

The cases of *Munn* v. *Illinois*, 94 U. S. 113; *Chicago, B. & Q. R. Co.* v. *Iowa*, Id. 155; and *Peik* v. *Chicago & N. W. R. Co.* Id. 164, are relied upon to sustain the validity of the act as it now stands. The first-named case was in relation to a warehouse situated wholly in Illinois, and does not, in my opinion, apply to the question under consideration. In the second case, the railroad about which the controversy arose was wholly within the state of Iowa. The last case, at first view, would seem to sustain the position assumed by counsel. But it cannot fairly be supposed that the court intended to declare that interstate commerce might be regulated by the states until congress chose to regulate it, for the same court has often said that inaction by congress in this respect is no warrant for state interference. The opinion is not as intelligible as perhaps it might have been made by a fuller statement of the facts. It was a peculiar case. A corporation of Illinois was, by the consent of that state,

merged into a corporation of the state of Wisconsin, and in express terms was thereafter to be governed by the laws of Wisconsin, within that state, and the constitution of Wisconsin authorized the legislation complained of, and the corporation had become a domestic corporation of Wisconsin, although its line of road extended into the state of Illinois. The court said that Wisconsin could certainly regulate its fares, and that such regulation affected people outside the state only incidentally. In any event we have not such a case before us in the striking particulars presented, to-wit, a case where one state had the power to regulate rates on a road extending beyond its limits. It will be observed that the court throughout treats the corporation as a domestic corporation under the power of Wisconsin throughout its line of road. The language of the court is: "Thus Wisconsin is permitted to legislate for the consolidated company in that state precisely the same as it would of its own original companies if no consolidation had taken place." It is sufficient to say, without expressing an opinion how far this peculiar condition of the corporation ought to modify the rule as to commercial power, that there is no such case presented here, and that the question before the court in this case is an open one, so far as it relates to this court.

The question, however, has been passed upon by Judge McCRARY, of the United States circuit court of Iowa, in the case of *Kaiser* v. *Illinois Cent. R. Co.* 18 FED. REP. 151, in which that distinguished judge held that a statute of Iowa fixing the maximum rate to be charged by railroad companies for carrying freight within the state is invalid in so far as, by its terms, it applies to through shipments, from points within the state to points without the state, because it is a regulation of commerce beyond the state, and, if upheld, would enable the state to discriminate against other states.

It will be observed that the constitutions of Illinois, Iowa, and Wisconsin, in which the cases relied upon by defendants' counsel arose, reserved the right to the legislatures, respectively, to fix maximum or regulate the rates of charges for transportation within the respective states, which is a right not reserved by the constitution of this state. The rule held by Judge McCRARY is the same recently announced by Judges BAXTER, KEY, and HAMMOND, in the case recently decided at Nashville, Tennessee. *Louisville & N. R. Co.* v. *Railroad Com'rs of Tenn.* 19 FED. REP. 679. Other decisions by eminent circuit judges, going to sustain the same position, might be referred to, but being satisfied that the rule stated is the law, I adopt it, and, applying it to the act of the legislature complained of in the bill, hold it to be in conflict with the constitution of the United States, and void. This being so, other questions raised in the bill need not be considered, as it would extend this opinion to too great a length.

The result is that the motion of the complainant must be sustained, and a writ of injunction awarded, as prayed for in the bill.