### In re HAINES.

(Supreme Court, Appellate Division, Fourth Department. June 5, 1900.)

MARITIME LIENS—CANAL BOAT— REPAIRS — CONTRACT — JURISDICTION — STATE COURTS.

Under Laws 1897, c. 418, art. 2, § 35, providing that a lien founded on a maritime contract can be enforced only in the courts of the United States, and in any other case in the courts of the state, where a canal boat navigating the Erie Canal and Hudson river, propelled by horse power and engaged in state commerce, was repaired by plaintiff, the state courts have jurisdiction to enforce a lien against such boat for an unpaid

balance for labor and materials used in making such repairs, since the lien was not obtained under a maritime contract.

Williams and Laughlin, JJ., dissenting.

Appeal from special term, Niagara county.

Action by Cornelius L. Haines to enforce a lien against the canal boat Robert W. Parsons. From an order denying a motion to vacate the attachment and set aside the proceedings, Clara Perry, owner of the boat, appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Martin Clark, for appellant.
George F. Thompson, for respondent.

ADAMS, P. J. This is an appeal from an order of the Erie special term denying a motion made by the appellant, Clara Perry, the owner of the canal boat Robert W. Parsons, to dismiss the proceedings herein upon the ground that the supreme court is without jurisdiction to entertain the same. The undisputed facts of the case are that the Robert W. Parsons is an ordinary canal boat, navigating the Erie Canal and the Hudson river; that in May, 1899, the petitioner made certain repairs to that boat, at his dry dock, in the village of Middleport, Niagara county, and furnished the necessary materials and labor therefor; that such repairs, labor, and materials amounted in value to the sum of $154.40, of which sum $90.10 has been paid, and that a balance of $64.30 remains due and unpaid, for which amount specifications of lien were filed under the general lien law of this state (Laws 1897, c. 418, art. 2). By section 35 of the article referred to, it is provided that:

"If a lien created by virtue of this article is founded upon a maritime contract, it can be enforced only by proceedings in the courts of the United States, and in any other case, in the courts of this state, in the manner provided by the Code of Civil Procedure."

No criticism is made as to the regularity of the petitioner's proceedings, provided he is entitled to invoke the aid of a state court in enforcing his lien; but it is contended that the contract out of which his right to a lien arose is maritime in its nature, and that the proceeding is therefore one of which a state court cannot take cognizance, inasmuch as the district courts of the United States are by the constitution and laws given exclusive jurisdiction of proceedings in rem in maritime and admiralty cases. Const. U. S. art. 3, § 2; Act Sept. 24, 1789, c. 20, § 9; Rev. St. U. S. § 563, cl. 8; The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296. The question which is thus presented for our consideration is one which has provoked much discussion, and one concerning which the state and federal courts have apparently entertained and expressed somewhat diverse views; but we think this diversity is due to the difficulty which necessarily attends any attempt to draw a line which shall determine in each individual case just when a vessel so far ceases to navigate domestic or inland waters as to become subject to maritime jurisdiction. No one, of course, doubts that the contract and lien

for repairs to a vessel plying between New York and Liverpool, whether made in a home or a foreign port, would be maritime in their nature, and consequently clearly within admiralty jurisdiction. The same would doubtless be true of a vessel engaged in navigating a gulf or river which adjoined or emptied into the sea. Poole v. Kermit, 59 N. Y. 554; The Glide, supra. But it has been repeatedly held that our state courts have jurisdiction in cases of repairs made and supplies furnished to boats engaged in running between different points upon some body of water wholly within the state,—such, for instance, as the Erie Canal. Sheppard v. Steele, 43 N. Y. 52; Brookman v. Hamill, Id. 554; King v. Greenway, 71 N. Y. 413; Fralick v. Betts, 13 Hun, 632. The truth of this assertion will doubtless be conceded; but it is claimed that a comparatively recent decision of the supreme court of the United States has virtually overturned the doctrine of the cases cited, and is authority for the proposition that even so insignificant a craft as a canal boat, engaged in navigating an artificial water way which is wholly within the borders of a state, is subject to admiralty jurisdiction, and consequently that a lien for repairs to the same cannot be enforced in a state court. Ex parte Boyer, 109 U. S. 629, 3 Sup. Ct. 434, 27 L. Ed. 1056. It is not to be denied that the principle enunciated in the case above cited, and which apparently constituted the appellant's main reliance, does have a tendency to extend admiralty jurisdiction to a point somewhat in advance of any theretofore attained; but, when the facts in that case are carefully examined, it will be seen, we think, that they bear no analogy to those of the one we are now considering. It seems that the controversy there arose out of a collision between two canal boats while they were navigating the Illinois & Michigan Canal. Although this canal is wholly within the territorial bounds of the state of Illinois, it was constructed upon lands, the use of which are vested in that state by the United States, upon the condition that it should forever remain a public highway for the use of the government. Moreover, its dimensions were such as to enable vessels to pass from the Mississippi river into Lake Michigan, and thus carry on interstate commerce. The two canal boats in question were propelled by steam, and were enrolled and licensed for the coasting trade, and were actually employed in the business of commerce and navigation between different ports and places in different states and territories of the United States, upon the lakes and navigable waters of the United States. A libel in admiralty was filed by the owner of one of the boats, but the court found that both parties were in fault, and adjudged that each should pay one-half of the damages occasioned by the collision. One of the owners thereupon presented a petition asking for a writ of prohibition to restrain further proceedings in the suit, upon the ground of want of jurisdiction of the district court as a court of admiralty. But upon the foregoing facts the prayer of the petition was denied; the supreme court, by Mr. Justice Blatchford, saying that:

"Navigable waters, situated as this canal is, used for the purposes for which it is used,—a highway for commerce between ports and places in different states, carried on by vessels such as those in question here,—is pub-

lic water of the United States, and within the legitimate scope of the admiralty jurisdiction conferred by the constitution and statutes of the United States, even though the canal is wholly artificial, and is wholly within the body of a state, and subject to its ownership and control."

To which conclusion, however, the learned justice was careful to add:

"This case does not raise the question whether the admiralty jurisdiction of the district court extends to waters wholly within the body of a state, and from which vessels cannot so pass as to carry on commerce between places in such state and places in another state or in a foreign country; and no opinion is intended to be intimated as to jurisdiction in such a case."

The rule as thus declared falls far short, we think, of sustaining the appellant's contention in the present case; for her boat was but an ordinary canal boat, propelled by horse power, which was not "employed in the business of commerce and navigation between ports and places in different states and territories of the United States, upon the lakes and navigable waters of the United States." On the contrary, its navigating ventures were confined to the Erie Canal and the Hudson river. It is true that the latter stream finds its way to the Atlantic Ocean, and that one of its banks is for a short distance within the territorial bounds of the state of New Jersey; but the court will take judicial notice that such a boat as the one in question cannot and does not navigate the high seas. The purpose for which it was constructed and used was doubtless to engage in commerce between the city of New York and various points upon the Erie Canal in the western part of the state; and while, in order to carry out this business, it was necessary that it should be towed through the Hudson river, we do not think that for that reason, or for any other which the record discloses, it can be successfully asserted that its sole purpose and occupation was not that of navigating inland and domestic waters. If the appellant's contention is well founded, then the state courts are deprived of all jurisdiction to enforce a lien for repairs made to any boat navigating the waters of the Erie Canal, however insignificant they may be, because, forsooth, the canal connects with a stream which ultimately empties into the Atlantic Ocean, and by following the course of which the boat might reach the same destination, although it had no occasion to do so, and would be pretty certain to go to the bottom if so perilous a voyage were attempted. We do not believe that the Case of Boyer, supra, is authority for any such startling doctrine, and we must refuse to give to it that force and effect until compelled so to do by a decision more directly in point than that appears to be. In this connection it is perhaps proper to add that the more recent decisions of the same tribunal to which our attention has been directed (In re Garnett, 141 U. S. 1, 11 Sup. Ct. 840, 35 L. Ed. 631; The Glide, supra) simply reiterate the doctrine of the Boyer Case, and apply it to facts which are even less analogous to those of the case at bar. It follows that the order appealed from should be affirmed. Order affirmed, with costs.

McLENNAN and SPRING, JJ., concur.

WILLIAMS, J. (dissenting). The proceeding was brought under section 3419 et seq. of the Code of Civil Procedure, to enforce a lien for repairs upon the canal boat. These sections provide for the proceedings to enforce liens upon vessels, created by virtue of article 2 of the lien law, not based upon a maritime contract. Article 2 of the lien law (chapter 418 of the Laws of 1897) provides for liens upon vessels for debts, not liens under the maritime law; and section 35 provides:

"If a lien created by virtue of this article is founded upon a maritime contract, it can be enforced only by proceedings in the courts of the United States, and in any other case, in the courts of this state, in the manner provided by the Code of Civil Procedure."

The appellant claims that the lien in question was founded upon a maritime contract, and can, therefore, be enforced only by proceedings in the United States courts. There is no dispute but that the lien here was for labor and materials used in making repairs upon the canal boat, which was navigating the waters of the Erie Canal and the Hudson river. The repairs were made in May, 1899, the lien was filed during the same month, and the seizure under the warrant was made the latter part of November, 1899, at Albany, N. Y., while the boat was upon a trip from Buffalo to Brooklyn, N. Y., with a cargo of lumber shipped from Buffalo November 1, 1899, consigned to a firm in Brooklyn.

The law is well settled, as stated in the case of The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296:

"The enforcement in rem of the lien upon a vessel created by the statutes of Massachusetts for repairs and supplies in her home port is exclusively within the admiralty jurisdiction of the courts of the United States."

The court in that case, after an extended review of the cases, said:

"In conclusion, the consideration by which this case must be governed may be summed up as follows: The maritime and admiralty jurisdiction conferred by the constitution and laws of the United States upon the district courts of the United States is exclusive. A lien upon a ship for repairs or supplies, whether created by the general maritime law of the United States or by a local statute, is a jus in re, a right of property in the vessel, and a maritime lien to secure the performance of a maritime contract, and therefore may be enforced by admiralty process in rem in the district courts of the United States. When the lien is created by the general maritime law, for repairs or supplies in a foreign port, no one doubts, at the present day, that under the decisions in The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397, and The Hine, 4 Wall. 555, 18 L. Ed. 451, above cited, the admiralty jurisdiction in rem of the courts of the United States is exclusive of similar jurisdiction of the courts of the states. The contract and the lien for repairs or supplies in a home port under a local statute are equally maritime, and equally within the admiralty jurisdiction, and that jurisdiction is equally exclusive."

The only question here, therefore, is whether the canal boat in question, navigating the Erie Canal and the Hudson river, is such a vessel as is covered by the law relating to maritime contracts. The claim made by the respondent is that the admiralty jurisdiction of the United States courts is confined to such vessels as navigate the high seas, and does not extend to boats engaged only in commerce between different points in the same state. In Ex parte Boyer, 109 U. S. 629, 3 Sup. Ct. 434, 27 L. Ed. 1056, decided in 1883, it was held that ad-

miralty had jurisdiction of a suit in rem against a steam canal boat to recover damages caused by a collision between her and another canal boat while the two boats were navigating the Illinois & Michigan Canal, four miles from its Chicago end, in Cook county, Illinois, although the libelant's boat was bound from one place to another in the same state,—Illinois. The waters of the canal were held to be public waters of the United States, and within the legitimate scope of the admiralty jurisdiction, though the canal was an artificial one, and wholly within the state of Illinois. In Re Garnett, 141 U. S. 1, 11 Sup. Ct. 840, 35 L. Ed. 631, it was held that the law of limited liability, as a part of the maritime law of the United States, was in force upon navigable rivers above tide water, and applied to enrolled and licensed vessels exclusively engaged in commerce on such rivers. In that case the Katie was a steamer engaged in the carrying trade between Augusta and Savannah, both upon the Savannah river and in the state of Georgia. The court, among other things, said:

"It being clear that the law of limited liability of shipowners is a part of our maritime code, the extent of its territorial operation cannot be doubted. It is necessarily co-extensive with that of the general admiralty and maritime jurisdiction; and that, by the settled law of this country, extends wherever public navigation extends,—on the sea and the great inland lakes, and the navigable waters connecting therewith. [Citing many cases.] It being established, therefore, that the law of limited liability is part of the maritime law of the United States, it only remains to determine whether the law may be applied to navigable rivers above the tide water, such as the Savannah river, and to vessels engaged in commerce on such rivers, like the steamboat Katie, in this case. Of this there can be no doubt whatever. The question has been settled by a long course of decisions, some of which are here referred to. [Citing many cases.] In all of these cases it was held that the admiralty and maritime jurisdiction granted to the federal government by the constitution of the United States is not limited to tide waters, but extends to all public navigable lakes and rivers. In some of the cases it was held distinctly that this jurisdiction does not depend on the question of foreign interstate commerce, but also exists where the voyage or contract, if maritime in character, is made, and to be performed wholly within a single state."

The court quotes from the case of The Belfast, 7 Wall. 624, 19 L. Ed. 266, as said by Mr. Justice Clifford:

"Navigable rivers, which empty into the sea, or into the bays and gulfs which form a part of the sea, are as much within the admiralty and maritime jurisdiction of the United States as the sea itself."

These are the latest expressions of the supreme court of the United States upon this subject to which our attention has been called, or that we have been able to find; and, if followed by this court, they are decisive of this appeal.

Our attention is called to several cases in the court of appeals in this state, but none of them were decided later than 1880; and, so far as they are in conflict with the clearly-expressed decisions of the higher court, they should be regarded as overruled. The controlling consideration in this case, under the decisions hereinbefore referred to, is that the canal boat in question was a boat navigating, not only the Erie Canal, but the Hudson river. This river is a public, navigable one, and empties into the sea in New York Harbor. It is not entirely within the state of New York, but touches the state of New Jersey as well. Its waters cannot be said to be inland waters

of the state of New York, merely. Clearly, in view of this consideration, under the authorities referred to, the contract was maritime in its nature. The courts of this state therefore had no jurisdiction of this proceeding, and the order appealed from should be reversed, with costs of the appeal to appellant, and motion granted, with $10 costs.

LAUGHLIN, J., concurs.