Richard SANDERS, Plaintiff–Appellee,

v.

PLACID OIL COMPANY,
Defendant–Appellant.

No. 85–4704
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1988.

---

James J. Brady, Gravel & Brady, Alexandria, La., for plaintiff-appellee.

John P. Napolitani, Jr., Laurence E. Best, Abbott, Webb, Best & Meeks, New Orleans, La., for defendant-appellant.

Before CLARK, Chief Judge, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, we consider whether Catahoula Lake, located in Louisiana, is a navigable water of the United States for purposes of federal admiralty jurisdiction. Because we find that Catahoula Lake is navigable as a matter of law, and that the district court did not err in limiting admissibility of evidence or granting summary judgment, we affirm.

I

On a gray January 1, 1983, Richard Sanders and Michael Wilder were cruising in a fifteen-foot outboard-motorboat, happily hunting ducks on Catahoula Lake in LaSalle Parish, Louisiana. They were contentedly boating on the Big Bend area of the lake when their boat suddenly struck a fourteen-inch submerged pipe that had been driven into the lake bottom by the appellant, Placid Oil Company (Placid). The pipe was unmarked, and its unwelcome presence could not have been discovered or anticipated. At impact, Sanders was catapulted into Catahoula's chilly waters, and the boat quickly sank. Wilder swam to get assistance, while Sanders held onto the pipe and just yelled to anyone and to no one in particular. After about an hour in the wintry water, the hoarse Sanders was retrieved from his solitary distress by a boat that had already rescued Wilder. Sanders' leg was badly swollen and eventually required surgery. After surgery, Sanders was left with a four-inch scar, a five-percent disability in the right knee, and residual discomfort which, we are told, has "retarded his exuberant lifestyle."

On July 20, 1983, Wilder filed a complaint against Placid that was consolidated in September with one filed by Sanders.

The actions in federal court were based on admiralty jurisdiction. In April 1985, Placid moved for summary judgment, alleging that Catahoula Lake is not navigable and therefore federal admiralty jurisdiction was improper. On May 24, 1985, Sanders and Wilder moved for summary judgment on the issue of admiralty jurisdiction, claiming that Catahoula Lake is navigable. The district court found that admiralty jurisdiction existed. 611 F.Supp. 841. Wilder and Placid reached a settlement on the day of the trial, and, following trial, the judge found for Sanders, awarding him approximately $33,000 in damages. Placid filed a motion for a new trial or to alter the judgment, which the trial court substantially denied. Placid filed a timely notice of appeal.

## II

Placid raises numerous issues on appeal. As most of these issues are without merit, we dispose of them summarily.[1] Placid's final contention, which we discuss at length, is that the district court erred because Catahoula Lake is nonnavigable as a matter of law.

## III

### A.

■ Placid contends that the federal courts lack federal admiralty jurisdiction over this action because Catahoula Lake is nonnavigable as a matter of law. Federal admiralty jurisdiction exists giving a court jurisdiction over a dispute if the tort occurs on navigable waters and the tort bears a

---

1. Placid contends that the district court erred in allowing Sanders to file a motion for summary judgment more than one month after Placid submitted its motion for summary judgment. This contention is without merit because Fed.R. Civ.P. 56 does not specify any time restrictions for filing summary judgment motions other than requiring that such motions be filed at least twenty days after the action is commenced and ten days before the time fixed for hearing. As both of these requirements were satisfied, the district court had the discretion to consider Sanders' motion.

Placid's next objection is that the district court unduly prejudiced Placid's interests by denying Placid's motion for summary judgment before reading Placid's supplemental motion. We hold that this question is subsumed into the question whether the district court properly found the lake navigable as a matter of law. Obviously, if the lake is navigable as a matter of law, Placid's memorandum would have little impact on the ultimate resolution of the case and any error by the district court would be harmless. Since we hold that the lake is navigable as a matter of law, *see infra,* Placid's injury, if any, was harmless.

Placid's third objection is that the district court prejudiced Placid's interests by refusing to entertain evidence on the issue of navigability of Catahoula Lake at trial, contrary to Placid's expectations. Here again, whether the district court erred turns in large part on the resolution of Placid's contention that material issues of fact precluded summary judgment. If material facts were in dispute, the court should have allowed evidence to be admitted to support each party's contentions. Since, however, we hold that the district court correctly concluded that no material facts were in dispute, *see infra,* we

find that the district court did not err in refusing to allow Placid to introduce evidence at trial on this issue. We also reject Placid's claim that it reasonably expected to be able to introduce evidence at trial. According to the district court's ruling on August 6, 1985, Placid was informed by the court prior to trial that testimony on the jurisdiction issue would not be necessary. Thus, any expectation that Placid may have had regarding the introduction of evidence was unreasonable.

Placid also contends that the existence of disputed issues of material fact rendered the district court's grant of summary judgment erroneous. We fail to see the disputed issues of fact. Although Placid and the district court reached different conclusions on the percentage of time that Catahoula Lake was navigable, we note that Placid's calculations were based upon vessels with nine-foot drafts, while the court based its determination on navigation by reference to any vessel. Thus, the district court did not err in granting summary judgment.

Finally, Placid claims that the summary judgment should be vacated because Placid did not receive copies of affidavits or evidence relied on by Sanders in support of his motion and the court thus erred in considering these materials when granting summary judgment for Sanders. We find this objection to be without merit. Assuming, *arguendo,* that Placid was not provided copies of Sanders' supporting materials, Placid has not shown that it was unable to obtain the affidavits. Since Placid complained to the court that it did not have these materials, it is clear that Placid was aware that these materials existed. Yet Placid appears to have made no effort to obtain copies of these materials by duplicating the court's copies or requesting duplicates from Sanders' counsel. Thus, we reject this contention.

significant relationship to traditional maritime activity. *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). In the instant case, there is no doubt but that the tort bears a significant relationship to traditional maritime activity. The question, then, is whether the district court properly found that Catahoula Lake is a navigable water of the United States. Placid argues that access into Catahoula Lake is gained over a weir constructed on the Little River at Archie, Louisiana. Placid contends that navigable access into Catahoula Lake over the Little River weir is so infrequent that reasonable minds must conclude that the lake is nonnavigable. Daily stage level charts indicate, Placid notes, that for the three years preceding the date of the injury, navigable access was possible only six percent of the time in 1982, not at all in 1981 and thirteen percent in 1980. Placid, however, ignores the facts that navigable access was possible twenty-five percent of the time in 1978, fifty-eight percent in 1979, sixty-six percent in 1983, and fifty percent in 1984. Thus, within a broader time frame than the one offered by Placid, the waters were navigable for a significant portion of time.

### B.

■ To the extent Placid is arguing that seasonal nonnavigability is sufficient to render waters nonnavigable as a matter of law, we reject this argument. As the district court noted, both the upper Mississippi River and Saint Lawrence Seaway are navigable waters that are impassable during winter months. Thus, the fact that during certain seasons the access to Catahoula Lake via the Little River weir is nonnavigable is not determinative of federal admiralty jurisdiction. *See generally* 1 E. Jhirad, A. Sann, B. Chase, M. Chynsky, *Benedict on Admiralty*, § 143 (7th Ed.1985). Having rejected this reason advanced by Placid that the waters are nonnavigable, we are still left to determine whether the district court erred in finding Catahoula Lake a navigable water of the United States or whether the weir precludes navigability in interstate travel or commerce.

### C.

■ The Supreme Court first enunciated the test for navigable waters when discussing rivers, and said:

Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in which such commerce is conducted by water.

*The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871). *See also* G. Gilmore & C. Black, *The Law of Admiralty* §§ 1–11. This test has subsequently been held to apply to all bodies of water, not just rivers, natural as well as artificial. *Ex Parte Boyer*, 109 U.S. 629, 632, 3 S.Ct. 434, 435, 27 L.Ed. 1056 (1884). In short, then, navigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce, and distinctions between natural and man-made bodies of water are immaterial. In order to determine whether the district court properly concluded that Catahoula Lake is navigable in fact, we must review the evidence upon which the district court relied.

### D.

■ The evidence in the record supports the district court's finding that the Little River, which is formed by the meeting of the Dudgdemona River and Bayou Castor, flows in a southerly direction into the lowlands that become Catahoula Lake at high water. From Catahoula Lake the water is discharged through several tributaries and

distributaries until the tributaries finally rejoin into one channel at Archie, Louisiana. In May 1972, engineers of the U.S. Army Corps of Engineers completed a diversion canal over one of the distributaries that acts as a permanent dam structure, foreclosing navigation except during flood stages. In 1973, the Corps constructed a weir across the span of the Little River at Archie. Thus, the water level of the lake is maintained from the outflow of the lake up to the weir itself at thirty-six feet above sea level. The water level of the lake is controlled by movable gates in the permanent dam across the diversion canal. As a result, when the water level of the Little River is higher than thirty-six feet above sea level, vessels may pass over the weir. The weir, then, although permanent, is not a constant obstruction to navigation, as indicated by our previous review of the percentages of navigable access. From Archie, Louisiana, the water flows until it eventually joins the Black River. The Black River runs into the Red River which eventually allows passage to either the Gulf Intracoastal Canal or the Mississippi River. A small but steady barge trade is conducted on the Black and Red Rivers, and the Mississippi River, of course, is a major maritime commercial artery. Accordingly, the district court properly found that these waters form a continuous highway between states over which commerce can be conducted.

### E.

In addition to determining navigability by reference to the water level of the Little River and Catahoula Lake, the district court reviewed the affidavits as testimony of three individuals who claimed to have navigated through Catahoula Lake after the Corps' construction projects were completed. Thomas William Coon testified by affidavit that he piloted a 35 by 110–foot barge, with 3–foot draft when empty, throughout Catahoula Lake as late as 1979. He also testified that he has been a passenger on crew boats as long as 40 feet which have passed into the Black River system from Catahoula Lake, navigating over the Little River weir at Archie on several occa-sions. Julian Wesley Thompson testified that in May 1985 he witnessed the passing of 40–foot crew boats over this weir. Vernie A. Gibson, a commercial fisherman and fur trapper, has navigated vessels of 5½ to 6–foot drafts over the Little River weir, and has done so as recently as 1982. In addition, in 1984 and 1985, Placid actively navigated crew boats, work boats, self-propelled barges and drilling barges on the Little River and Catahoula Lake.

### F.

■ Finally, the district court noted that the Corps considers the Little River and Catahoula Lake to be navigable waters of the United States, maintains structures throughout the system, and requires Placid to have a permit that governs the placing of structures in those waters. Although these determinations are not controlling, *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), the district court correctly concluded that, from an evidentiary point of view, they are significant. *Finneseth v. Carter*, 712 F.2d 1041, 1045 n. 4 (6th Cir.1983).

### IV

Accordingly, we hold that the evidence in this case fully supports the district court's finding that Catahoula Lake is, in fact, a navigable water of the United States, and it follows that as a matter of law, admiralty jurisdiction attaches. The judgment of the district court is

AFFIRMED.