Gwen **HARDWICK**, Pamela **Richardson**, Edward **Hardwick** III, and The Estate of Edward **Hardwick**, Jr.

v.

**PRO–LINE BOATS, INC.**, Pompanette, Inc., and American Suzuki Motor Corporation.

Civ. A. No. G–95–069.

United States District Court, S.D. Texas, Galveston Division.

Aug. 4, 1995.

Chris A. Stacy, Chris A. Stacy & Associates, Houston, TX, for Gwen Hardwick, Pamela Richardson, Edward Hardwick, III.

Cecil Lynn Solomon, Billings & Solomon, Houston, TX, for Pro–Line Boats, Inc.

D. Dudley Oldham, John Francis Sullivan, Fulbright & Jaworski, Houston, TX, for Pompanette, Inc.

Jay W. Brown, Beirne Maynard & Parsons, Houston, TX, for American Suzuki Motor Corp.

Craig Stephen Wolcott, Hays McConn Rice & Pickering, Houston, TX, for Helton Boat Works, Inc.

### ORDER ON MOTION TO DISMISS

KENT, District Judge.

This is a personal injury action brought by Plaintiff Gwen Hardwick et al. ("Hardwick") against Defendants Pro–Line Boats, Inc. ("Pro–Line Boats"), Pompanette, Inc. ("Pompanette"), and American Suzuki Motor Corporation ("American Suzuki") for the death of her husband Edward Hardwick, Jr., who was killed on Lake Houston on March 7, 1993, while operating a boat manufactured by Defendant Pro–Line Boats. The case was filed in this Court under the assumption that the location of the accident in question granted the Court subject matter jurisdiction pursuant to the Court's admiralty powers. Before the Court now are several Motions to Dismiss brought by the individual Defendants, all of which argue that this Court lacks subject matter jurisdiction because no admiralty jurisdiction is presented in this case. After careful and thorough consideration of this complex issue, the Court finds that Defendants' Motions should be **GRANTED**.[1]

██ It is well established that admiralty jurisdiction for maritime torts requires both locality—the situs of the waterway—and nexus—the status of the vessel or activities. *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Three Buoys Houseboat Vacations U.S.A. v. Morts*, 921 F.2d 775, 777 (8th Cir.1990), *cert. denied*, 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). Locality is satisfied by a navigable waterway, while nexus is satisfied by a sufficient rela-

1. Because the parties have submitted affidavits and documents outside the face of the pleadings, the Court treats this Motion to Dismiss as governed by the standards of Rule 56 dismissal rather than by the standards of Rule 12.

tionship of the vessel to maritime activities. *Three Buoys*, 921 F.2d at 777. It is also clear that in this Circuit nexus is clearly present for maritime jurisdiction when an accident involves a pleasure-boat accident and is *not* limited to litigation involving only commercial activity on navigable waters. *Richardson v. Foremost Insurance Co.*, 641 F.2d 314, 316 (5th Cir.), *aff'd sub nom. Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).[2]

Consequently, the critical question before the Court in this case is whether Lake Houston provides Plaintiffs with a locality sufficient to invoke the admiralty jurisdiction of the Court. The question is by no means a simple one, and the Court is struck by the historical complexity surrounding this issue. The Supreme Court first announced the test for navigable waters in the context of rivers in the seminal case of *The Daniel Ball*. The Court stated that:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. *And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition,* as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in which such commerce is conducted by water.

*The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870) (emphasis added). It has subsequently been held that the same test applies to all bodies of water, natural as well as artificial. *Ex Parte Boyer*, 109 U.S. 629, 632, 3 S.Ct. 434, 435, 27 L.Ed. 1056

(1884). "In short, then, navigable waters of the United States are those waters capable, *in fact*, of navigation in interstate travel or commerce, and distinctions between natural and man-made bodies of water are immaterial." *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1377 (5th Cir.1988) (emphasis added).

"Navigability", however, is a term subject to different definitions depending on the context in which a case arises. In *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), the Supreme Court indicated that "navigability" has been used to define four separate and distinct concepts: (1) to delineate the boundaries of navigational servitudes; (2) to define the scope of Congress' regulatory authority under the Commerce Clause; (3) to determine the extent of authority of the Army Corps of Engineers under the Rivers and Harbors Appropriation Act of 1899; and (4) to establish the limits of the jurisdiction of the federal courts conferred by Article III, § 2 of the United States Constitution over admiralty and maritime cases. *Id.* at 171–72, 100 S.Ct. at 388.

For the purpose of this case, it is important to distinguish between "navigability" as it relates to Congress' regulatory authority under the Commerce Clause and "navigability" as it relates to admiralty jurisdiction. Plaintiffs essentially argue that if a body of water is navigable in its original state, then a manmade dam cannot change that status and deprive a federal court of admiralty jurisdiction over it. This, however, is the meaning of "navigability" within the context of Congress' regulatory powers and *not* in the context of a federal court's jurisdiction over admiralty matters. *See Economy Light & Power Co. v. United States*, 256 U.S. 113, 118, 41 S.Ct. 409, 411, 65 L.Ed. 847 (1921) (holding that the "navigability" of the Desplaines River allowed Congress to order a dam to be built). Congress' Commerce power, being broader than the Court's admiralty jurisdiction, extends over waters that

---

**2.** Although it earlier seemed that the Fourth Circuit had held to the opposite conclusion, that position seems to have been abandoned in more recent rulings. *Compare Crosson v. Vance*, 484 F.2d 840 (4th Cir.1973) (finding that admiralty jurisdiction does not reach a claim for personal injuries by a water skier against an allegedly negligent operator of a towboat) *with Hogan v. Overman*, 767 F.2d 1093 (4th Cir.1985) (holding that an action by a water skier against a negligent towboat does raise admiralty jurisdiction).

are not presently navigable. *Kaiser Aetna,* 444 U.S. at 172, 100 S.Ct. at 389.

■ The distinction is important in this case because it is undisputed that Lake Houston is entirely landlocked and is not capable of being used for interstate commerce of any kind in its present condition. However, the lake—which comprises 13,000 acres of water area and 162 miles of shoreline—was formed by damming the San Jacinto River, which Vice Admiral A.C. Richmond of the United States Coast Guard declared in 1957 to be a navigable river connecting to the Gulf of Mexico. Based on this, Plaintiffs argue that Lake Houston is "navigable" for jurisdictional purposes. The Court disagrees.

■ First, it is clear that the Supreme Court's test of "navigable" in *The Daniel Ball* requires that bodies of water be either (1) currently used in navigation or (2) be capable of navigation *in their ordinary condition. The Daniel Ball,* 77 U.S. (10 Wall.) at 563. It is also quite clear to this Court that neither of these possibilities is present in this case. Plaintiffs rely in large measure on a letter written by United States Coast Guard Vice Admiral A.C. Richmond on the Coast Guard's jurisdiction over Lake Houston—a letter written in 1957. Two things are immediately apparent from this communication. First, the letter is exclusively concerned with "navigability" as it relates to the Coast Guard's jurisdiction over Lake Houston, which is judged by a different standard from "navigability" in the jurisdictional context. Second, Plaintiffs point to Vice Admiral Richmond's conclusion that the fact that the San Jacinto River is not navigable for all practical purposes above the Beaumont Highway Bridge could be remedied by certain dredging operations as evidence that Lake Houston is "navigable" for jurisdiction purposes.

The Court finds Plaintiffs' conclusion on this point to be entirely mystifying. First, the possibility that the San Jacinto River's navigability might be altered at various parts of the river does not change the fact that Lake Houston is still not navigable *in its ordinary condition* at this point. The Court entirely fails to see how *possible,* and mas-sive, dredging operations—which were only a matter of speculation in 1957, and the possibility of which has not been updated in nearly forty years—could create admiralty jurisdiction for this Court. Secondly, the fact that the San Jacinto River's navigability could be expanded has no relevance to this case at all. It is undisputed that boats cannot currently travel from the lake to the San Jacinto River. Defendants have offered this Court an affidavit of Ronald E. Hudson, the Assistant Director of the City of Houston's Public Works Department, stating that "[b]ecause of the dam, no vessels of any sort are able to navigate from the lake into the southern leg at the San Jacinto River. Because of the dam, Lake Houston is landlocked to navigation in interstate commerce and travel throughout the year."

Plaintiffs point to the case of *Finneseth v. Carter,* 712 F.2d 1041 (6th Cir.1983) as support for their contentions, but the Court finds the case utterly inapposite to the facts currently before it. First, although the Sixth Circuit appears to have accepted the broader Commerce Clause use of "navigability" to define that term in the jurisdictional context, its holding obviously has no binding authority on this Court, which is exclusively bound by the Fifth Circuit. Secondly, the facts of *Finneseth* have absolutely nothing to do with this case. In *Finneseth,* a boating accident occurred on a landlocked lake that spanned the state boundary between Tennessee and Kentucky, thus allowing interstate commerce and travel to occur as a matter of definition. In this case, it is undisputed that Lake Houston is located entirely within the State of Texas and that it is currently impossible for any boat to travel from the lake to any "navigable" body of water.

Plaintiffs also argue that the Fifth Circuit has joined the Sixth Circuit in adopting the broader use of "navigability" that would serve Plaintiffs' case. In support of its argument, Plaintiffs point to the Fifth Circuit's opinion in *Richardson,* 641 F.2d at 314. Although this Court always admires and encourages vigorous advocacy, it believes that Plaintiffs' enthusiasm for their case may have led to a misreading of *Richardson,* which is entirely irrelevant to this dispute. *Richard-*

*son* concerned a dispute over whether admiralty jurisdiction could be had over a collision between two pleasure boats—the nexus aspect of jurisdiction—and did not address the locality requirement of navigability, which was merely assumed in that case. Indeed, the Fifth Circuit explicitly stated that the waterway in question in *Richardson* was *not* landlocked. *Id.* at 316. In this case, Lake Houston clearly *is* landlocked. Thus, the Circuit's determination in *Richardson* that "[i]f the waterway is capable of being used in commerce, that is a sufficient threshold to invoke admiralty jurisdiction," *id.,* has no relevance to this case because Lake Houston is not capable of being used in interstate commerce.

Finally, Plaintiffs also point to *Wilder v. Placid Oil Co.,* 611 F.Supp. 841 (W.D.La. 1985) as evidence that admiralty jurisdiction is present in this case. Once again, however, the facts of *Wilder* can easily be distinguished from those in this case. In *Wilder,* a pleasure craft struck a submerged and unmarked steel well-head casing pipe allegedly owned and maintained by Placid Oil Company on a low-lying portion of Catahoula Lake. The court found that admiralty jurisdiction was present in that case because there was testimony that at least a few boats had been able to travel from Catahoula Lake in Louisiana to Orange, Texas and to Mississippi. Thus, the lake in that case was indisputably capable of facilitating interstate commerce and travel. As stated above, however, there is absolutely *no* evidence in this case that any boat has ever travelled from Lake Houston to any other state or to the Gulf of Mexico. Thus, whatever the holding of *Wilder,* it has no application to this case.

What is relevant, however, is the Fifth Circuit's brief, three-paragraph ruling in *Guillory v. Outboard Motor Corp.,* 956 F.2d 114 (5th Cir.1992). In *Guillory,* the Circuit found that Crooked Creek Reservoir in Evangeline Parish, Louisiana, was not a navigable waterway because "Crooked Creek is located entirely within Evangeline Parish and the state of Louisiana. Vessels cannot access Bayou Nezbique because of the dam. Nor can they travel interstate to the waters of Crooked Creek." *Id.* at 115. As stated above, the facts are identical to those presently before the Court.

For these reasons, the Court finds that Lake Houston is not a navigable body of water for purposes of admiralty jurisdiction and that Defendants' Motions to dismiss are **GRANTED.** Consequently, the above-captioned cause of action is hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Each party is to bear his or its own taxable costs incurred in this matter. It is also **ORDERED** that the parties file no further pleadings on this matter, including motions to reconsider and the like. Instead, the parties are instructed to seek whatever relief they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons stated in the Court's Order entered this date, the above-captioned cause of action is hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Each party is to bear his or its own taxable costs.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**