## COLORADO CENTRAL CONSOLIDATED MINING COMPANY *v.* TURCK.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 935. Submitted October 16, 1893. — Decided November 6, 1893.

This court exercises appellate jurisdiction only in accordance with the acts of Congress on that subject.

When the original jurisdiction of a Circuit Court of the United States is invoked upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the pleadings, that the suit is one of that character, of which the Circuit Court could properly take cognizance at the time its jurisdiction is invoked.

When the jurisdiction of a Circuit Court is invoked solely on the ground of diverse citizenship, the judgment of the Circuit Court of Appeals is final, although another ground for jurisdiction in the Circuit Court may be developed in the course of subsequent proceedings in the case.

THIS was an action in ejectment brought by John Turck against the Colorado Consolidated Mining Company, December 2, 1885, in the Circuit Court of the United States for the District of Colorado. The complaint alleged :

" First. That plaintiff is a resident and citizen of the State of Colorado ; that the Colorado Central Consolidated Mining Company, defendant, is a corporation organized and existing under and by virtue of the laws of the State of New York ; that the amount in dispute in this action exceeds the sum of $500 exclusive of costs.

" Second. Plaintiff further alleges that upon the first day of January, A.D. 1885, he was the owner of, seized in fee and entitled to the possession of a certain lode mining claim and premises, situate in Argentine mining district, Clear Creek County, Colorado, described as follows, to wit.: The Aliunde Tunnel lode, No. 2, with all the dips, spurs, angles and variations of said lode throughout their entire length and depth, and all other lodes, veins, ledges or deposits of mineral, the top or

apex of which lie inside of said Aliunde Tunnel lode, No. 2, as patented to John Turck by certain letters patent of the United States, dated the 31st day of January, A.D. 1883, which lode, mining claim and premises are described in said patent as mineral entry No. 1862 in the series of the United States land office at Central City, Colorado, and designated by the surveyor-general of the State of Colorado, as survey lot No. 1494, which lode is fifteen hundred feet in length, by one hundred and fifty feet in width.

"Third. That said Aliunde Tunnel lode, No. 2, has a pitch to the northwest of about sixty degrees from a horizontal; that the top and apex of said lode lies within the side and end lines of said Aliunde Tunnel lode, No. 2; that owing to the dip of said lode to the northwest, at a depth of about three hundred feet beneath the surface of the ground, said Aliunde Tunnel lode, No. 2, passes under the north side line of said patent and enters the land adjoining; that while plaintiff was so seized and possessed of said Aliunde Tunnel lode, No. 2, the defendant afterwards, and on the 1st day of January, A.D. 1885, wrongfully entered upon and ousted the plaintiff from about four hundred feet of said Aliunde Tunnel lode, No. 2, mining claim and premises next hereinafter described, and now wrongfully withholds the same from plaintiff, that is to say: That said defendant wrongfully ousted the plaintiff from so much of said Aliunde Tunnel lode, No. 2, mining claim and premises as lies beneath the depth of three hundred feet beneath the surface of the ground north of the north side line of said Aliunde Tunnel lode No. 2, carrying said north line down vertically, and from thence on the pitch of said lode northwesterly, and measuring thence along the line of said Aliunde Tunnel lode, No. 2, a distance of four hundred feet next west of the northeast end line of said claim."

That plaintiff owned the property in fee, and was entitled to possession, and that the value of the rents, issues, and profits, "while said plaintiff has been excluded therefrom by the defendants, amounts to two hundred and fifty thousand dollars." Wherefore judgment was demanded for possession, damages, and costs.

The defendant answered by a general and special denial, and for a second defence said :

"1. That it is, and ever since the 15th day of December, A.D. 1879, it hath been, the owner and seized in fee and in the actual possession of the Colorado Central lode mining claim survey, lot No. 261, being a lode mining claim 1500 feet in length by 50 feet in width, and of all lodes the tops or apexes of which may be found within the lines of said survey, lot No. 261.

"2. That said Colorado Central lode mining claim was entered for patent and patented by the United States to the grantors of defendant before said date and long before the real or pretended discovery, location or patenting of said Aliunde Tunnel lode, No. 2.

"3. That said Colorado Central lode mining claim lies immediately to north of and adjoining the survey lot of said Aliunde Tunnel lode, No. 2, and that whatever vein the defendant has worked on is the vein of the Colorado Central lode, or some vein having its top or apex within the side lines of said survey lot No. 261, and not within the side lines of the survey lot of said Aliunde Tunnel lode, No. 2."

And by the fourth paragraph defendant denied that it wrongfully withheld possession from plaintiff of the Aliunde lode, or any vein having its apex within the side lines thereof.

Plaintiff replied to this second defence, denying the defendant's ownership in the Colorado Central lode to the extent averred; admitting the second paragraph of the answer that the Colorado Central lode was patented before discovery and patent of the Aliunde, and that the two lodes lay adjoining each other; but denying that the Aliunde lode was a part of the Colorado Central lode, and that the vein of the plaintiff had its top or apex within the side lines of the Colorado Central lode, at any point claimed by the plaintiff, and denying that defendant had not wrongfully withheld possession.

The case went to trial and resulted in a verdict for the plaintiff and judgment thereon, which was set aside on payment of costs, under the local statute, and a second trial was had with the same result. Certain exceptions were taken by

the defendant to parts of the charge of the court and to the refusal to give certain instructions requested. The case was taken by writ of error to the United States Circuit Court of Appeals for the Eighth Circuit, and the judgment was affirmed, May 8, 1892. A petition for rehearing was filed during the term, which was denied February 18, 1893, and thereupon a writ of error was allowed to this court.

The opinions of the Circuit Court of Appeals will be found in 4 U. S. App. 290, 50 Fed. Rep. 888, and 54 Fed. Rep. 262.

The case was submitted on motion to dismiss or affirm.

*Mr. Willard Teller* and *Mr. H. M. Orahood* for the motion.

*Mr. Simon Sterne, Mr. C. J. Hughes,* and *Mr. R. S. Morrison* opposing.

Mr. Chief Justice Fuller delivered the opinion of the court.

From *Wiscart* v. *D'Auchy,* 3 Dall. 321, to *American Construction Co.* v. *Jacksonville &c. Railway Co.,* 148 U. S. 372, it has been held in an uninterrupted series of decisions that this court exercises appellate jurisdiction only in accordance with the acts of Congress upon that subject.

By the Judiciary Act of March 3, 1891, it is provided that the review by appeal, by writ of error, or otherwise, from existing Circuit Courts shall be had in this court, or in the Circuit Courts of Appeals thereby established, according to the provisions of the act regulating the same. The writ of error in this case was brought under section six of that statute, which provides that "judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy being aliens and citizens of the United States or citizens of different States," and also that "in all cases not hereinbefore, in this section, made final there shall be of right an appeal or writ of error or review of the case by the Supreme Court of the United States where the matter in controversy shall exceed one thousand dollars besides costs." 26 Stat. 826, 828, § 6, c. 517.

If the judgment of the Circuit Court of Appeals for the Eighth Circuit was final, under the section in question, then this writ of error must be dismissed. And in order to maintain that the decision of the Circuit Court of Appeals was not final, it must appear that the jurisdiction of the Circuit Court was not dependent entirely upon the opposite parties being citizens of different States.

Under the act of March 3, 1875, 18 Stat. 470, c. 137, Circuit Courts of the United States had original cognizance of all suits of a civil nature at common law or in equity, among others, where the matter in dispute exceeded, exclusive of costs, the sum or value of five hundred dollars, and arising under the Constitution or laws of the United States, or in which there was a controversy between citizens of different States.

This complaint was filed December 2, 1885, and alleged the diverse citizenship of the parties as the ground of jurisdiction. But it is said that the vital question raised in the case was whether the patentee of a lode claim, whose discovery and patent were later than the date of another's patent, may follow his junior patented lode, the apex thereof being within his side lines, into the other's patented ground on the dip; and that the solution of this question depended upon the construction and application of section 2322 of the Revised Statutes, concerning the dip and apex of lodes. Hence that the suit really and substantially involved a controversy only to be determined by reference to the Federal statute, and that jurisdiction existed on that ground and did not depend entirely upon the other.

To maintain this proposition, it is contended that reference may be made to the entire pleadings, the evidence, or the rulings of the courts below.

This view, however, ignores the settled doctrine that the inquiry, in cases such as this, into the jurisdiction of the Circuit Court, is limited to the facts appearing on the record in the first instance. This has been often so held in the enforcement of the inflexible rule which requires this court in the exercise of its appellate power to deny the jurisdiction

of courts of the United States in all cases where such jurisdiction does not affirmatively appear in the record on which it is called upon to act.

And we do not think we can do better in elucidation of the rule than quote from the opinion of the court in *Metcalf* v. *Watertown*, 128 U.: S. 586, 588, where the subject is considered and the authorities cited.

"It has been often decided by this court," said Mr. Justice Harlan, by whom that opinion was delivered, "that a suit may be said to arise under the Constitution or laws of the United States, within the meaning of that act, [18 Stat. 470, c. 137,] even where the Federal question upon which it depends is raised, for the first time in the suit, by the answer or plea of the defendant. But these were removal cases, in each of which the grounds of Federal jurisdiction were disclosed either in the pleadings, or in the petition and affidavit for removal; in other words, the case, at the time the jurisdiction of the Circuit Court of the United States attached, by removal, clearly presented a question or questions of a Federal nature. *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 140; *Ames* v. *Kansas*, 111 U. S. 449, 462; *Pacific Railroad Removal Cases*, 115 U. S. 1, 11; *Southern Pacific Railroad Co.* v. *California*, 118 U. S. 109, 112. Besides, the right of removal under the act of 1875 could not be made to depend upon a preliminary inquiry as to whether the plaintiff had or had not the right to sue in the state court of original jurisdiction from which it was sought to remove the suit. When, however, the original jurisdiction of a Circuit Court of the United States is invoked upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character; in other words, it must appear, in that class of cases, that the suit was one of which the Circuit Court, at the time its jurisdiction is invoked, could properly take cognizance. If it does not so appear, then the court, upon demurrer or motion, or upon its own inspection of the pleading, must dismiss the suit; just as it would remand to the state court a suit which the record, at

the time of removal, failed to show was within the jurisdiction of the Circuit Court. It cannot retain it in order to see whether the defendant may not raise some question of a Federal nature upon which the right of recovery will finally depend; and if so retained, the want of jurisdiction, at the commencement of the suit, is not cured by an answer or plea which may suggest a question of that kind."

The jurisdiction of the Circuit Court was invoked, December 2, 1885, by the filing of the complaint, from which it appeared that the suit was one of which cognizance could be properly taken on the ground of diverse citizenship, but it did not appear therefrom that jurisdiction was rested, or could be asserted, on any other ground. The Federal question now suggested did not emerge until the defendant set up its second defence, and not then unless deducible from the bare averment that it claimed under the senior discovery and patent, which was admitted in the replication.

The proposition that the right given by section 2322 of the Revised Statutes to the holder of the apex to follow his vein on its dip outside of the side lines of his claim is merely a right against an adjoining claimant holding under a junior patent or certificate was afterwards advanced in certain instructions requested by defendant and refused.

The jurisdiction had, however, already attached and could not be affected by the subsequent developments. It depended entirely upon diverse citizenship when the suit was commenced, and to that point of time the inquiry must necessarily be referred.

If the plaintiff had invoked it on two distinct grounds, one of them being independent of diverse citizenship, a different question might have been presented.

We are of opinion that the judgment of the Circuit Court of Appeals was final under the sixth section, and that the writ of error cannot be maintained.

*Writ of error dismissed.*