**GRAND RIVER DAM AUTHORITY v. GOING et al.**

**No. 211.**

District Court, N. D. Oklahoma.

Sept. 22, 1939.

R. L. Davidson, of Tulsa, Okl., general counsel, Q. B. Boydstun, of Vinita, Okl., associate counsel, and Gayle M. Pickens, of Miami, Okl., for petitioners.

Duff & Manatt, of Tulsa, Okl., and Harve N. Langley, of Pryor, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

This is an action at law for the condemnation of lands described in the petition. Petitioner alleges that (a) it is a public corporation existing under the laws of the State of Oklahoma, Article 4, Chapter 70, Oklahoma Session Laws of 1935, as amended by Article 2, Chapter 70, Oklahoma Session Laws of 1937, 82 Okl.St.Ann. § 861 et seq.; (b) it possesses powers of government for the public benefit and is authorized and empowered, among other things, to control, store and preserve the waters of the Grand River and its tributaries; (c) it has heretofore determined to construct on Grand River, near Pensacola, in Mayes County, Oklahoma, a dam and hydro-electric power plant for the purpose, among others, of impounding and storing the waters of Grand River and developing and generating through the use of such waters electric power and energy for sale and distribution, and has entered into contracts for the construction and equipment of said dam and hydro-electric power plant to be completed not later than December 31, 1939; (d) Grand River in Oklahoma is a tributary of the Arkansas River, a navigable water of the United States; (e) on December 15, 1937, it filed with the Federal Power Commission its declaration of intention (with supplement thereto filed January 3, 1938) to construct a dam and hydro-electric power plant in and across the said Grand River, near the Town of Pensacola, in Mayes County, Oklahoma, "for the purpose of flood control and development of hydro-electric power" and upon a hearing thereof before the Federal Power Commission on February 11, 1938, the Power Commission, hereinafter referred to as "Commission", determined that the petitioner is a public corporation, created under the laws of Oklahoma for the purpose of constructing and operating said Project, and that the construction and operation of said Project "as proposed by the petitioner will affect navigable stages of the Arkansas River a navigable water of the United States, to which said Grand River is a tributary, and will affect the interests of inter-state commerce." Attached to the petition as Exhibit "A" is the finding of the Commission under date of February 11, 1938, as follows:

"Upon declaration of intention filed December 15, 1937, and supplement thereto filed January 3, 1938, by Grand River Dam Authority, of Vinita, Oklahoma, pursuant to Section 23(b) of the Federal Power Act, 16 U.S.C.A. § 817 announcing declarant's intention to construct a dam and hydro-electric plant in and across Grand River near the Town of Pensacola, in Mayes County, Oklahoma, for the purpose of flood control and development of hydroelectric power;

"After investigation of such proposed construction and hearing held upon said declaration, it appearing to the Commission that:

"(a) The declarant is a public corporation created, organized and existing under the laws of the State of Oklahoma for the purpose of constructing and operating the said project;

"(b) Said project will consist of a dam approximately 147 feet in height above the bed rock, creating a reservoir in said river with storage capacity of approximately 2,-000,000 acre-feet, and the installed generating capacity will be approximately 60,000 kilowatts;

"(c) The construction and operation of said project as proposed by the declarant will affect navigable stages of the Arkansas River, a navigable water of the United States, to which said Grand River is a tributary;

"The Commission therefore finds that:

"The construction and operation of said project in the manner proposed by the declarant will affect the interests of interstate commerce."

Petitioner also alleges that it is necessary to condemn the land described therein for reservoir purposes extending approximately 55 miles up stream from the dam, and that was the finding of the Commission under date of July 12, 1939, shown by Exhibit "B" to plaintiff's petition. There is neither allegation nor evidence that the Grand River is or ever was a navigable stream. The plaintiff made application to the Commission for a license to construct a dam on the Grand River and the license was issued under date of July 12, 1939, and accepted by the petitioner, as shown by Exhibits "B" and "C" to the petition.

The defendants have moved to dismiss the petition on 16 separate grounds, which may be summarized as follows: (a) that under the Federal Power Act the Commission had no power to grant a license to the petitioner to construct a dam on the Grand River because the Grand River is not a navigable stream; (b) that Congress had no power under the National Constitution to delegate to the Commission authority to issue a license to petitioner; and (c) that if Congress had constitutional authority and did grant power to the Commission to issue a license, the license is void because defendants had no notice of the hearing of the application to the Commission for the license and therefore the license was issued without due process of law.

Section 1 of the Act of the Oklahoma Legislature approved April 26, 1935, as amended by the Act approved January 28, 1937 (see Okl.1935 Session Laws, page 350, and 1937 Session Laws, page 481, 82 Okl. St.Ann. § 861), is as follows:

"Article 4, of Chapter 70, Oklahoma Session Laws of 1935, is hereby amended to read as follows:

"'Section 1. There is hereby created within the State of Oklahoma a conservation and reclamation district to be known as 'Grand River Dam Authority' (hereafter called the District), and consisting of that part of the State of Oklahoma which is included within the boundaries of the Counties of Adair, Cherokee, Craig, Delaware, Mayes, Muskogee, Nowata, Ottawa, Tulsa, Wagoner, Sequoyah, McIntosh, Creek, and Okmulgee. Such District shall be, and is hereby declared to be a governmental agency, body politic and corporate, with powers of government and with the authority to exercise the rights, privileges, and functions hereinafter specified, including the control, storing, preservation and distribution of the waters of the Grand River and its tributaries for irrigation, power and other useful purposes, the reclamation and irrigation of arid, semi-arid, and other lands needing irrigation, and the conservation and development of the forests, water and hydroelectric power of the State of Oklahoma.

"'Nothing in this Act or in any other Act or law contained, however, shall be construed as authorizing the District to levy or collect taxes or assessments, or to create any indebtedness payable out of taxes or assessments, or in any manner to pledge the credit of the State of Oklahoma, or any subdivision thereof.'

"Approved Jan. 28, 1937."

Section 2 of the 1935 Oklahoma Legislative Act, 82 Okl.St.Ann. § 862, is as follows:

"The District shall have and is hereby authorized to exercise the following powers, rights and privileges:

"(a) To control, store and preserve, within the boundaries of the District, the water of the Grand River and its tributaries for any useful purpose, and to use, distribute and sell the same within the boundaries of the District;

"(b) To develop and generate water power and electric energy within the boundaries of the District;

"(c) To prevent or aid in the prevention of damage to person or property from the waters of the Grand River and its tributaries;

"(d) * * *;

"(e) To acquire by purchase, lease, gift, or in any other manner, and to maintain, use and operate any and all property of any kind, real, personal, or mixed, or any interest therein, within or without the boundaries of the District, necessary or convenient to the exercise of the powers, rights, privileges, and functions conferred upon it by this Act;

"(f) To acquire by condemnation any and all property of any kind, real, personal, or mixed, or any interest therein within or without the boundaries of the

District necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act, in the manner provided by general law with respect to condemnation;

[Paragraphs (g), (h) and (i) here omitted.]

"(j) To sue and be sued in its corporate name;

"(k) To adopt, use and alter a corporate seal;

[Paragraphs (1), (m), and (n) here omitted.]

"(o) To borrow money for its corporate purposes and, without limitation of the generality of the foregoing to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with any such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require."

There is nothing in the Oklahoma Legislative Act indicating that it was the purpose and intent thereby to obstruct or improve navigable waters within the State of Oklahoma. The plaintiff has no stockholders except the State of Oklahoma. It is purely a state governmental agency and the question evidently arose in the minds of the state authorities as to whether or not the state has the power to construct a dam on the Grand River without the consent of the Federal Government because the Grand River is a direct tributary of the Arkansas River, a navigable stream from the point the Grand River empties into it. This brings us to the questions in the case.

■ **First.** As there is no diversity of citizenship the jurisdiction of this court turns on the question as to whether or not this suit arises under the Constitution or laws of the United States, which must be determined from the petition regardless of the questions that may be brought into the suit by the defendants' pleading. Colorado Central Consol. Mining Company v. Turck, 150 U.S. 138, 14 S.Ct. 35, 37 L. Ed. 1030; Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Devine v. Los Angeles, 202 U.S. 313, 26 S.Ct. 652, 50 L.Ed. 1046; Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218.

■ **Second.** Petitioner's license to construct the Grand River Dam having been granted by an agency of the Federal government makes this action one arising under the Constitution and laws of the United States. Lancaster v. Kathleen Oil Company, 241 U.S. 551, 36 S.Ct. 711, 60 L.Ed. 1161; Wellsville Oil Co. v. Miller, 243 U.S. 6, 37 S.Ct. 362, 61 L.Ed. 559; Jackson v. Gates Oil Company, 8 Cir., 297 F. 549; Osborn v. Bank of the United States, 9 Wheat, 738, 823, 824, 6 L.Ed. 204, 224; Pacific R. R. Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319; Butler v. National Home, 144 U.S. 64, 12 S.Ct. 581, 36 L.Ed. 346; Texas & P. R. Co. v. Eastin & Knox, 214 U.S. 153, 29 S.Ct. 564, 53 L.Ed. 946.

■ **Third.** The question as to whether or not an inter-state river or lake is navigable or non-navigable arises under the Constitution and laws of the United States and is therefore a federal question. United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267; Borax Consolidated v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9.

■ **Fourth.** If jurisdiction otherwise exists, the United States District Court has jurisdiction to entertain a judicial proceeding to condemn private property to or for a public use and to fix the compensation therefor without regard to whether the power of eminent domain was conferred upon the petitioner by state or federal laws. Wilson v. Union Electric Light & Power Co., 8 Cir., 59 F.2d 580; Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297; Searl v. School District No. 2, 124 U.S. 197, 8 S.Ct. 460, 31 L.Ed. 415; 10 Encyc. of United States Supreme Court Reports, page 669 and long list of cases.

■ **Fifth.** This Court has jurisdiction to adjudicate defendants' contentions that (a) this court has no jurisdiction, (b) the Federal Power Commission was without power to grant petitioner a license to construct a dam on a non-navigable river within the State of Oklahoma, and (c) Congress had no power to vest the Power Commission with any authority or control over non-navigable waters within a state. Whether or not the Power Commission had any jurisdiction over the Grand River or any other non-navigable stream is always open to question, and the defendants have the right to have the court rule upon that point. Borax Consolidated v. City of

Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9; St. Joseph Stock Yards Company v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938. Defendants can challenge the constitutionality of the Federal Power Act and the validity of the plaintiff's license granted by the Power Commission without the presence of the United States or the Power Commission as parties to this case. If the Power Commission had jurisdiction the defendants can not challenge the validity of the plaintiff's license on the ground there was not sufficient evidence before the commission, nor can defendants have the license set aside or vacated without the presence of the United States as a party. Venner v. Michigan Central Railroad Co., 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868; State of Oklahoma v. State of Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771; Southern Pacific Co. v. City of Willow Glen, 9 Cir., 49 F.2d 1005. But defendants can deny the power of Congress and that of all its hierachies.

Sixth. Under the test laid down for determining whether or not a river is navigable there can be no doubt the Grand River is not navigable and never has been. United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746.

Seventh. Courts will take judicial notice that the Mississippi, Ohio, Potomac, Hudson, Missouri and other rivers are navigable streams.

As said in State of Pennsylvania v. Wheeling, etc., Bridge Co., 13 How. 518, 561, 14 L.Ed. 249, 267, "That the Ohio River is navigable, is a historical fact, which all courts may recognize."

Eighth. But whether or not the Arkansas River is navigable is a question of fact. United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267; Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746.

In Brewer-Elliott Oil & Gas Co. v. United States, supra, it was contended that the Arkansas River was navigable through the Osage Nation (north of the Grand River Dam site), but the District Court, 249 F. 609, the Court of Appeals, 8 Cir., 270 F. 100, and the United States Supreme Court, 260 U.S. 77, 43 S.Ct. 60, 63, 67 L.Ed. 140, found that it was not a navigable river through or bordering on the Osage Nation, but did find it was navigable from the confluence of the Grand River and the Arkansas River. Mr. Chief Justice Taft said:

"A navigable river in this country is one which is used, or is susceptible of being used in its ordinary condition, as a highway for commerce over which trade and travel are or may be. conducted in the customary modes of trade, and travel on water. It does not depend upon the mode by which commerce is conducted upon it, whether by steamers, sailing vessels or flat boats, nor upon the difficulties attending navigation, but upon the fact whether the river in its natural state is such that it affords a channel for useful commerce. Oklahoma v. Texas, 258 U.S. 574, 42 S. Ct. 406, 66 L.Ed. 771, decided May 1, 1922; Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L. Ed. 847; The Montello, 20 Wall. 430, 22 L.Ed. 391; The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999. Voluminous testimony was introduced in the District Court upon the issue of navigability. That court considered it all with evident care and had no difficulty in reaching the conclusion that the Arkansas River along the Osage Reservation was not, and had never been, navigable within the adjudged meaning of that term, and that the head of navigation is and was the mouth of the Grand river, near which was Fort Gibson, and this is a number of miles below the reservation. The Circuit Court of Appeals reviewed this finding and fully concurred in its correctness."

While the defendants in this case are not bound by the findings of fact and conclusions of law in the Brewer-Elliott case, supra, nevertheless, this court takes judicial notice of the findings of fact by the District Court, the Court of Appeals, and the United States Supreme Court in the Brewer-Elliott case, and will recognize the navigability of the Arkansas River from its confluence with the Grand River in the absence of evidence showing beyond a reasonable doubt that the Arkansas River is not navigable.

Ninth. There is no express provision in the National Constitution vesting jurisdiction in the Federal Government over navigable waterways. The Federal Government's jurisdiction is based upon

Section 8 of Article 1 of the Constitution, U.S.C.A., conferring upon Congress the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes", and declaring in the last paragraph of Section 8 that Congress shall have the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof." Neither is there any express provision in the Federal Power Act vesting in the Commission jurisdiction over non-navigable streams of water although they are tributaries to navigable streams.

Paragraph 8 of Section 201, Title 2 (49 Stat.L. 838, 16 U.S.C.A. § 796) defines "navigable water" as follows:

"(8) 'Navigable waters' means those parts of streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, and which either in their natural or improved condition notwithstanding interruptions between the navigable parts of such streams or waters by falls, shallows, or rapids compelling land carriage, are used or suitable for use for the transportation of persons or property in interstate or foreign commerce, including therein all such interrupting falls, shallows, or rapids, together with such other parts of streams as shall have been authorized by Congress for improvement by the United States or shall have been recommended to Congress for such improvement after investigation under its authority."

Paragraph (e) of Section 4, amended by Act Aug. 26, 1935, Title 2, § 202 (49 Stat.L. 840, 16 U.S.C.A. § 797(e) ) provides:

"Sec. 4 [§ 797]. The Commission is hereby authorized and empowered—* *

"(e) To issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, * * * . Whenever the contemplated improvement is, in the judgment of the Commission, desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, a finding to that effect shall be made by the commission and shall become a part of the records of the commission."

Paragraph (b) of Section 23, as amended by Act Aug. 26, 1935, Title 2 § 210 (49 Stat.L. 846, 16 U.S.C.A. § 817), provides:

(b) "It shall be unlawful for any person, State, or municipality, for the purpose of developing electric power, to construct, operate, or maintain any dam, water conduit, reservoir, power house, or other works incidental thereto across, along, or in any of the navigable waters of the United States, or upon any part of the public lands or reservations of the United States (including the Territories), or utilize the surplus water or water power from any Government dam, except under and in accordance with the terms of a permit or valid existing right-of-way granted prior to June 10, 1920, or a license granted pursuant to this Act [chapter]. Any person, association, corporation, State, or municipality intending to construct a dam or other project works across, along, over, or in any stream or part thereof, other than those defined herein as navigable waters, and over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States shall before such construction file declaration of such intention with the Commission, whereupon the Commission shall cause immediate investigation of such proposed construction to be made, and if upon investigation it shall find that the interests of interstate or foreign commerce would be affected by such proposed construction, such person, association, corporation, State, or municipality shall not construct, maintain, or operate such dam or other project works until it shall have applied for and shall have received a license under the provisions of this Act [chapter]. If the Commission shall not so find, and if no public lands or reservations

are affected, permission is hereby granted to construct such dam or other project works in such stream upon compliance with State laws."

The Act speaks of "project works across, along, over, or in any stream or part thereof, other than those defined herein as navigable waters, and over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States". The words "over which Congress has jurisdiction under its authority to regulate commerce" involve the question as to what these words mean. Paragraph (b) of section 23, as amended, uses this language: "To construct a dam or other project works across, along, over, or in any stream or part thereof, other than those defined herein as navigable waters, and over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States." Does that apply to immediate tributaries, and if it applies to immediate tributaries, does it apply to tributaries to tributaries, and if so, where is the end?

·As Major Bowes says, "The wheel of fortune spins; around and around it goes, and where it stops, nobody knows". Evidently Congress intended to vest in the Power Commission all the authority the United States possesses over waterways, whether navigable or tributaries to navigable streams. It would seem that the power of the Federal government over waterways is not unlimited and that the stopping place is with tributaries to navigable streams. If we go beyond that then the Federal government will have jurisdiction over the farmers' ponds and city bathing pools on the ground that the storage of water in these pools and ponds tends to decrease the flow of water in navigable streams. But with immediate tributaries to navigable streams it seems entirely reasonable that the Federal government has some jurisdiction. If a tributary to a navigable stream is clogged up with dead trees and other debris so as to withhold the water from the navigable stream, it seems that the Federal government could have the tributary dredged and cleaned out so that the water necessary to the navigable stream reaches its destination. I know of no navigable river that supplies its own water. It must be fed by other rivers and in these feeders the Federal government is interested for if they are cut

off or choked off by any artificial means it seems clear to me that the Federal government would have the right to remove the obstruction.

. In United States v. Rio Grande Dam & Irrigation Company, 174 U.S. 690, 19 S.Ct. 770, 775, 43 L.Ed. 1136, in speaking of the powers of a state in regard to waterways, the Court said: "Although this power of changing the common-law rule as to streams within its dominion undoubtedly belongs in each state, yet two limitations must be recognized: First, that, in the absence of specific authority from congress, a state cannot by its legislation, destroy the right of the United States, as the owner of lands bordering on a stream, to the continued flow of its waters, so far, at least, as may be necessary for the beneficial uses of the government property; second, that it is limited by the superior power of the general government to secure the uninterrupted navigability of all navigable streams within the limits of the United States. In other words, the jurisdiction of the general government over interstate commerce and its natural highways vests in that government the right to take all needed measures to preserve the navigability of the navigable water-courses of the country, even against any state action."

In United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 382, 61 L.Ed. 746, the Court sustained a claim filed against the United States for damages caused by raising the water level of navigable streams by locks and dams. The locks and dams were constructed on the Cumberland and Kentucky rivers and raised the water level so as to overflow the lands of the claimants for damages. In that case the Court said:

"* * * by an unbroken current of authorities it has become well established that the test of navigability in fact is to be applied to the stream in its natural condition, not as artificially raised by dams or similar structures; that the public right is to be measured by the capacity of the stream for valuable public use in its natural condition; that riparian owners have a right to the enjoyment of the natural flow without burden or hindrance imposed by artificial means, and no public easement beyond the natural one can arise without grant or dedication save by condemnation, with appropriate compensation for the private right. Cases exemplifying these propositions are cited in a marginal note. We have found no case to the contrary. * *

"That the test of navigability in fact should be applied to streams in their natural condition was in effect held in The Daniel Ball, 10 Wall. 557, 19 L.Ed. 999,— a case which turned upon the question whether Grand river, in the state of Michigan, was one of the 'navigable waters of the United States' within the meaning of acts of Congress that regulated vessels carrying merchandise and passengers upon such waters. Mr. Justice Field, speaking for the court, after showing that the tidal test was not applicable in this country, said ([10 Wall. at] p. 563 [19 L.Ed. 999]): 'A different test must, therefore, be applied to determine the navigability of our rivers, and that is found in their navigable capacity. Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.' * * *

"In several other cases the limitation of the public right to the natural state of the stream has been recognized. · Packer v. Bird, 137 U.S. 661, 667, 11 S.Ct. 210, 34 L.Ed. 819, 820; United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 698, 19 S.Ct. 770, 43 L.Ed. 1136, 1139; Leovy v. United States, 177 U.S. 621, 631, 20 S.Ct. 797, 44 L.Ed. 914, 918.

"It follows from what we have said that the servitude of privately-owned lands forming the banks and bed of a stream to the interests of navigation is a natural servitude, confined to such streams as, in their ordinary and natural condition, are navigable in fact, and confined to the natural condition of the stream. And, assuming that riparian owners upon non-navigable tributaries of navigable streams are subject to such inconveniences as may arise from the exercise of the common right of nagivation, this in like manner must be limited to the natural right. The findings make it clear that the dams in question, constructed by the government in the Cumberland and Kentucky rivers, respectively, are for raising the level of those streams along certain stretches by means of backwater, so as to render them, to the extent of the raising, artificial canals instead of natural waterways. In the language of engineering, the government has 'canalized' the rivers. We intimate no doubt of the power of the United States to carry out this kind of improvement. Nor do we doubt that, upon the completion of the improvements, these rivers: the Cumberland, because it is an avenue of communication between two states; the Kentucky and also the Cumberland, because, in connection with the Ohio and Mississippi rivers, they furnish highways of commerce among many states (Gilman v. Philadelphia, 3 Wall. 713, 725, 18 L.Ed. 96, 99; The Daniel Ball, 10 Wall. 557, 563, 19 L. Ed. 999, 1001; South Carolina v. Georgia, 93 U.S. 4, 10, 23 L.Ed. 782, 783) ;—remained navigable waters of the United States for all purposes of Federal jurisdiction and regulation, notwithstanding the artificial character of the improvements. (Ex parte Boyer, 109 U.S. 629, 632, 3 S.Ct. 434, 27 L.Ed. 1056, 1057; The Robert W. Parsons (Perry v. Haines) 191 U.S. 17, 28, 24 S.Ct. 8, 48 L.Ed. 73, 78).

"But the authority to make such improvements is only a branch of the power to regulate interstate and foreign commerce, and, as already stated, this power, like others, must be exercised, when private property is taken, in subordination to the 5th Amendment."

That case holds that the Federal Government's power over navigable streams authorizes it to raise the water level above "its natural condition" subject to claims of land owners for damages on account of overflowing their lands by raising the natural height of the navigable river. The Court said, "We intimate no doubt of the power of the United States to carry out this kind of improvement."

In National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 36, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893, 108 A.L.R. 1352, Mr. Chief Justice Hughes said: " * * * The fundamental principle is that the power to regulate commerce is the power to enact 'all appropriate legislation' for its 'protection or advancement' (The Daniel Ball, 10 Wall. 557, 564, 19 L.Ed. 999) ; to adopt measures 'to promote its growth and insure its safety' (Mobile County v. Kimball, 102 U.S. 691, 696, 697, 26 L.Ed. 238) ; 'to foster, protect, control, and restrain.' (Second Employers' Liability Cases, supra, 223 U.S. 1, at page 47, 32 S.Ct. 169, 174, 56 L.Ed. 327, 38 L.R.A.,N.S., 44). See Texas & N. O. R. Co. v. Railway & S. S. Clerks [281 U.S. 548, 50 S.Ct. 427, 74 L. Ed. 1034], supra. That power is plenary

and may be exerted to protect interstate commerce 'no matter what the source of the dangers which threaten it.' Second Employers' Liability Cases, 223 U.S. 1, at page 51, 32 S.Ct. 169, 176, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; Schechter [Poultry] Corp. v. United States [295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947], supra. Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control. Schechter [Poultry] Corporation v. United States, supra."

It seems clear that the United States is interested in any sort of project on a non-navigable immediate tributary to a navigable river that tends to affect the volume of water naturally coming into the navigable stream from the tributary. This Court is of the opinion that the Federal Power Commission had jurisdiction to investigate the question with respect to the Grand River Dam and issue a license to the Grand River Dam Authority.

Tenth. Defendants contend that the license is void because they had no notice of the hearing of the application for the license. Paragraph (f) of Section 4 of the Power Act, as amended by Act Aug. 26, 1935, tit. 2, § 202 (49 Stat.L. 841, 16 U.S.C.A. § 797(f)) is as follows: "To issue preliminary permits for the purpose of enabling applicants for a license hereunder to secure the data and to perform the acts required by section 9 hereof [802 of this chapter]: Provided, however, That upon the filing of any application for a preliminary permit by any person, association, or corporation the commission, before granting such application, shall at once give notice of such application in writing to any State or municipality likely to be interested in or affected by such application; and shall also publish notice of such application once each week for four weeks in a daily or weekly newspaper published in the county or counties in which the project or any part thereof or the lands affected thereby are situated".

There is no allegation in the petition that notice was published in accordance with the above quoted provisions of the Power Act, but as the Power Commission granted the license it is presumed that it did its duty and had such publication made. Assuming the publication was made it had the effect of making all persons, directly or remotely interested, parties to the proceeding before the Power Commission, and if any of the land owners wanted to be heard before the Commission they had the right to intervene and oppose the application for the license, and if their intervention and petition for rehearing was denied, they could appeal to the Court of Appeals under the provisions of Section 313 of the Power Act, 49 Stat.L. 860, 16 U.S.C.A. § 825*l*.

In my opinion the failure to give notice would not in any way injure or deprive the defendants, or any other land owner in the vicinity, of their property rights. The Grand River Power Authority was vested with the power of eminent domain under the Act of the Oklahoma Legislature. It seems to be pretty well settled that "where notice will avail nothing, no notice is required". See 5 Encyc. of United States Supreme Court Reports, page 642, paragraph (b), and United States Supreme Court decisions cited in Note 76. If it be true that the Power Commission had no jurisdiction to grant a license until all land owners affected are served with notice, then no pipeline company, telephone or telegraph company, or railroad company can be vested with the power of eminent domain until every land owner and prospective land owner has been served with notice of the hearing of the application for a charter. No court has ever held or will ever hold that the Legislature or Congress has to give notice to land owners before vesting the power of eminent domain in a public corporation. The defendants' objection to the license on the ground of want of notice is unfounded. Section 21 of the Federal Power Act, 16 U.S.C.A. § 814, confers jurisdiction on this court over condemnation proceedings.

In conclusion it appears that the only issue in this case is whether or not condemnation proceedings shall be in the Federal or State Court. There are many cases in which the State and Federal Courts have concurrent jurisdiction, and the rule is that the judgment of the State or Federal Court first deciding the case controls. McDougal v. Black Panther Oil & Gas Co., 8 Cir., 273 F. 113; 14 Am.Juris., page 435.

Defendant's motion to dismiss is overruled. As evidence was introduced on this

hearing petitioner's counsel should within ten days prepare findings of fact and conclusions of law as required by the United States Supreme Court Rules, submit them to counsel for defendants, and thereafter in five days submit them to this Court on notice to defendants' counsel.