LYNCH et al. v. CLEMENTS et al.
No. 34990.

Supreme Court of Oklahoma.
Nov. 10, 1953.

Archibald Bonds and Kelly Brown, Muskogee, for plaintiffs in error.

Chal Wheeler and Andrew Wilcoxen, Muskogee, for defendants in error.

WILLIAMS, Justice.

The parties are referred to as they appeared in the trial court.

Plaintiffs being the owners of a tract of land abutting the Arkansas River a short distance below the point of its confluence with the Grand River, in 1944 entered into a lease or easement agreement whereby defendants were given the right to enter and cross said land for the purpose of taking sand and gravel from the river bed adjacent thereto, for a consideration named and paid up to the time this suit was filed.

Defendants later entered into a contract with the State of Oklahoma through the Commissioners of the Land Office, whereby they agreed to pay the state a certain price for all sand and gravel taken from the river adjacent to plaintiffs' land. This was upon the theory that the Arkansas River was navigable at this point and owned by the state after statehood.

Plaintiffs did not agree that the state owned the river bed and filed this action to recover the amount paid the state for sand and gravel removed, on the theory that their property line extended to the center of the river bed, and not merely to the high water mark. Plaintiffs produced evidence to show that the river was not navigable as a matter of fact where it passed their land. Defendants contended that the navigability of said river was a question of law already settled. The court found for the defendants on the ground that the Arkansas River had been judicially determined to be navigable below its confluence with the Grand.

The evidence disclosed that the title of plaintiffs was based upon grants to Cherokee Indian allottees made prior to statehood. The judgment of the court is based upon the following findings of fact:

"That the lands described in plaintiffs' petition in this case, were allotted to Citizens of the Cherokee Nation, and were acquired by plaintiffs by inheritance and purchase, and they have at all times since acquiring said lands, been in actual possession thereof. * * *

"The court further finds that it is settled law that the head of navigation of the Arkansas River, is at the mouth of the Grand River, just above the land involved. * * *

"The court further finds that the river bed adjacent to plaintiffs' land is the property of the State of Oklahoma."

The court reached conclusions in accord with the above findings, to the effect that the head of navigation on the Arkansas is at the mouth of Grand River which is some 2 or 3 miles above the land of plaintiffs, that it is navigable adjacent to plaintiffs' lands and that the bed thereof is owned by the State of Oklahoma, and entered judgment accordingly. Plaintiffs appeal.

Plaintiffs have combined their assignments of error and contend that the court erred in finding and holding that the Arkansas River adjacent to their land is and was a navigable stream at this point. Plaintiffs admit that if the Arkansas River is navigable below the mouth of the Grand River, the judgment of the trial court should be affirmed, but say it should be reversed if same is not navigable below that point.

Plaintiffs cite the case of State v. Nolegs, 40 Okl. 479, 139 P. 943, decided by this court in 1914. The navigability of the Arkansas River at a point adjoining Osage County was involved. The court announced its decision as to navigability at that point in the third syllabus as follows:

"The Supreme Court takes judicial notice that the Arkansas river is the largest western tributary of the Mississippi-Missouri system; that it is 2000 miles long, draining an area of ap-

proximately 189,000 square miles; that it is navigable through its course in the state of Oklahoma; that the title to the bed of the Arkansas river, to high-water mark, within the boundaries of Oklahoma, is in the state."

While the Nolegs case has not been expressly overruled in its entirety, its effect has been denied in so far as it attempted to take from the Osage Indians one-half of the river bed which had been ceded to them by Federal grant in 1872. See Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77 at page 87, 43 S.Ct. 60, 67 L.Ed. 140; Grand River Dam Authority v. Going, D.C., 29 F.Supp. 316, at page 321.

 In the present case, the evidence shows that plaintiffs' title to their lands is based upon federal grants to Cherokee citizens made prior to statehood. Their rights raise not a local but a federal question. The Supreme Court of the United States has said:

"As to such a grant, the judgment of the state court does not bind us, for the validity and effect of an act done by the United States is necessarily a federal question." Brewer-Elliott Oil & Gas Co. v. United States, supra, 260 U.S. at page 87, 43 S.Ct. at page 64.

See also Hardin v. Jordan, 140 U.S. 371, at page 380, 11 S.Ct. 808, 35 L.Ed. 428, in which the Supreme Court of the United States exercised jurisdiction in a case involving title under a government grant, applying the law of Illinois. And see Aladdin Petroleum Corp. v. State, 200 Okl. 134, at page 140, 191 P.2d 224, citing Packer v. Bird, 137 U.S. 661–673, 11 S.Ct. 210, 34 L.Ed. 819. In the Aladdin case this court in syllabus 2 stated [200 Okl. 134, 191 P.2d 225]:

"Where previous to and on the admission of Oklahoma into the Union the title to the bed of any stream was in the United States or another as its grantee, the question of the navigability of such stream so far as it is determinative of or relates to the title of the United States or of its grantee presents a Federal question."

The holding of United States v. State of Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844, was:

"The question of navigability is a federal question." (Editor's syllabus 2 of the U. S. Report)

In the case of Aladdin Petroleum Corporation v. State, supra, we hold (Syllabus 7) that where prior to statehood title to the bed of a non-navigable river has passed into private ownership by federal grant, the state cannot divest the grantees of their title by declaring the river to be navigable. In that case, the State of Oklahoma, assuming that the river was navigable, had given oil and gas leases covering part of the river bed adjacent to the Osage reservation. That portion of the river was held to be non-navigable and the lease executed by the state held void. This decision was grounded upon the holding of the Supreme Court of United States, since the issue to be decided was not a local but a federal question. The general rule in regard to title to beds of rivers within the state on its admission to the Union is expressed in U. S. v. State of Utah, supra, (L.Ed. Editor's syllabi 1 and 2) as follows:

"Title to beds of rivers within a state pass to the state on its admission to the Union, if the rivers are then navigable; and if they are not then navigable, the title remains in the United States.

"The navigability of rivers, upon which depends the passing of title to their beds to the state upon its admission to the Union, is a Federal question of which a Federal court has jurisdiction even though such rivers are concededly not navigable in interstate or foreign commerce and the question is whether they are navigable waters of the state."

 In the Aladdin case, supra, it was said in the first syllabus:

"Upon admission of Oklahoma into the Union, the title to the beds of the streams within its borders passed to and became the property of the State

of Oklahoma by operation of law where the stream was navigable. And, where not navigable, the title to the bed did not pass."

The holding of the federal Courts relative to the navigability of the Arkansas River is expressed in the case of Grand River Dam Authority v. Going, supra [29 F.Supp. 321], wherein it is said:

"In Brewer-Elliott Oil & Gas Co. v. United States, supra, it was contended that the Arkansas River was navigable through the Osage Nation (north of the Grand River Dam site), but the District Court, 249 F. 609, the Court of Appeals, 8 Cir., 270 F. 100, and the United States Supreme Court, 260 U.S. 77, 43 S.Ct. 60, 63, 67 L.Ed. 140, found that it was not a navigable river through or bordering on the Osage Nation, but did find it was navigable from the confluence of the Grand River and the Arkansas River. Mr. Chief Justice Taft said:

" 'A navigable river in this country is one which is used, or is susceptible of being used in its ordinary condition, as a highway for commerce over which trade and travel are or may be conducted in the customary modes of trade, and travel on water. It does not depend upon the mode by which commerce is conducted upon it, whether by steamers, sailing vessels or flat boats, nor upon the difficulties attending navigation, but upon the fact whether the river in its natural state is such that it affords a channel for useful commerce. [State of] Oklahoma v. Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771, decided May 1, 1922; Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847; The Montello, 20 Wall. 430, 22 L.Ed. 391; The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999. Voluminous testimony was introduced in the District Court upon the issue of navigability. That court considered it all with evident care and had no difficulty in reaching the conclusion that the Arkansas River along the Osage Reservation was not, and had never been,

navigable within the adjudged meaning of that term, and that the head of navigation is and was the mouth of the Grand River, near which was Fort Gibson, and this is a number of miles below the reservation. The Circuit Court of Appeals reviewed this finding and fully concurred in its correctness.'

"While the defendants in this case are not bound by the findings of fact and conclusions of law in the Brewer-Elliott case, supra, nevertheless, this court takes judicial notice of the findings of fact by the District Court, the Court of Appeals, and the United States Supreme Court in the Brewer-Elliott case, and will recognize the navigability of the Arkansas River from its confluence with the Grand River in the absence of evidence showing beyond a reasonable doubt that the Arkansas River is not navigable."

Since the plaintiffs deraigned their title from Cherokee allottees, it follows that unless the Cherokee Nation was granted the river bed plaintiffs have never acquired it. The Supreme Court of the United States has held definitely that the Arkansas is navigable at the point where it adjoins plaintiffs' land. The Cherokee Nation did not acquire the river bed and could not convey it.

■ Near the land in the instant case was land involved in the case of Vickery v. Yahola Sand & Gravel Co., 158 Okl. 120, 12 P.2d 881. The plaintiffs there admitted that the Arkansas River was navigable adjacent to the land involved. The question naturally arose as to what title, if any, the Cherokee allottee got in the river bed opposite the land in the Vickery case. There it was announced in the third, fourth, fifth and sixth syllabi:

"The treaties between the United States and the Cherokee Indian Tribe and the patent made pursuant thereto, whereby certain lands on both banks of the Arkansas river in what is now the state of Oklahoma were granted to said Cherokee Indian Tribe, show no purpose to define riparian rights, and

the intention to abide by state law is inferred.

"A state takes title to the bed of navigable streams in its borders, where the United States has not exercised its power so to do, by specific grant or necessary intendment, granted or conveyed its title thereto prior to the admission of the state into the Union.

"The United States did not, by specific grant, or otherwise, grant or convey to the Cherokee Indian Tribe the title to the bed of the Arkansas river, where in its course it was navigable in fact.

"A Cherokee, allottee of land along the course of the Arkansas river at a place where the same is admitted to be navigable acquired no title to the bed of said river below high-water mark."

In the seventh syllabus of the Aladdin case, supra, to which reference has been made hereinabove, we said:

"A state, upon its admission into the Union, takes sovereignty over the public lands in the condition in which they are at that time; and if the bed of a non-navigable river has then passed into private ownership by grant of the Federal government, the state cannot divest the title by declaring the river to be navigable."

United States Supreme Court in Brewer-Elliott Oil & Gas Co., v. United States, supra, has held that the Arkansas River is navigable where it adjoins plaintiffs' land and that title to the river bed became vested in the State of Oklahoma upon its admission to the Union, unless the Federal Government granted the river bed to the Cherokee Nation, from whom plaintiffs obtained their title. Since it has been expressly declared by this court in the Vickery case that title to the bed of the Arkansas was never granted to the Cherokees, it must follow that title to the river bed rests in the State of Oklahoma to which it passed when Oklahoma became a state in 1907.

In view of the foregoing, we find it unnecessary to discuss plaintiffs' contention that the trial court erred in sustaining motion of defendants to strike allegations of plaintiffs' petition with reference to the value of sand and gravel allegedly wrongfully taken from plaintiffs by defendants more than two years prior to the filing of plaintiffs' action.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, ARNOLD and O'NEAL, JJ., concur.